Deal *v.* The State.

No. 17,222.

## DEAL *v.* THE STATE.

SUPREME COURT.—*Jurisdiction, Limited to Errors of Law.—Errors of Fact, Trial Court Corrects.*—The jurisdiction of the Supreme Court, on an appeal, is limited to errors of law only, and it has no jurisdiction to pass upon errors of fact. The correction of errors of fact into which a jury may fall belongs exclusively to the trial court. The Supreme Court can not retry questions of facts.

SAME.—*No Evidence to Support Verdict, Error of Law, Review.*—If there be no evidence to support the verdict or finding, or if there be no evidence to support any fact essential to the support of the verdict or finding, such verdict or finding is an error of law which may be reviewed or corrected on appeal.

NEW TRIAL.—*Verdict Against Preponderance of Evidence.— Duty of Court.—Review in Supreme Court.*—If the jury find against the clear preponderance of the evidence, even in a case of conflict, that constitutes an error of fact, and not of law; and it is the duty of the trial court to correct such error by granting a new trial on the ground that the verdict is not sustained by sufficient evidence. In such a case the Supreme Court has no power to review such acts.

SAME.—*When Trial Court Should Grant.—Power of Supreme Court.*—If the trial court make a mistake of law against a party, which is materially prejudicial or harmful to his rights, it is the duty of the trial court to grant him a new trial, and if it refuse to do so the Supreme Court can, for the error of law, reverse the case and order a new trial, for in such an instance he has not had one fair trial allowed him by the law.

WITNESS.—*Weight of Testimony, Duty of Jury in Considering.*—It is the duty of the jurors, in determining the weight to be given to the testimony of a witness, to consider his interest or lack of interest in the case, his manner on the witness stand, the probability or improbability of his testimony, with all the circumstances in evidence which may aid them in weighing his testimony.

EVIDENCE.—*Court Decides what Admissible.—Jury Must Consider all Admitted.— Weight.*—The court decides as a matter of law what is proper to be considered by the jury on the admission of each item of evidence before them, and the jurors can not decline to consider it, even in a criminal case. The court can not tell them how much weight they ought to assign to the evidence, nor to any part of it, but it is not error for the court to tell them that they can not lawfully escape the duty of considering all of it.

Deal *v.* The State.

PRACTICE.—*Instructions, Waiver of Right to Complain of as Erroneous Instructions.*—If, upon a party's request, an instruction is given that has been substantially given by the court in another instruction, he can not complain of the instruction that was given by the court on its own motion, even though the latter be erroneous.

SAME.—*Qualifications of Juror, How Presented on Appeal.*—If a juror be disqualified to sit on a jury, the question of his disqualification can be presented on appeal only by a bill of exceptions. It can not be presented by recitals in the motion for a new trial.

SAME.—*Objection to Testimony.—Offer to Prove Certain Fact, How Question Saved for on Appeal.*—An objection sustained to a mere offer to prove a certain fact by a witness then on the witness stand, although an exception be taken to the ruling of the court, presents no question for review on appeal when no question is asked such witness, or objection taken and sustained, and an exception taken to the ruling of the court.

SAME.—*When Evidence Admissible.*—When evidence offered tends to prove a fact in issue, however slight that tendency may be, it is admissible, and it is the duty of the court to admit it.

CRIMINAL LAW.—*Homicide.—Self-Defense.—Both Parties in the Wrong.*—Where both the defendant and the deceased are at fault, neither can justify the taking of life without retreating. A defendant who takes another's life must himself be without fault, or he can not go acquit upon the ground of self-defense.

From the Allen Circuit Court.

*H. Colerick* and *J. E. K. France,* for appellant.

*A. G. Smith,* Attorney-General, *P. B. Colerick* and *J. M. Robinson,* for State.

McCABE, C. J.—The appellant, on a trial by jury, was found guilty of the crime of voluntary manslaughter in the killing of one Hugh Crye, on an indictment charging appellant with the crime of murder in the first degree, who fixed his punishment at fifteen years in the State prison.

The court rendered judgment on the verdict over appellant's motion for a new trial and in arrest of judgment. These rulings are assigned as the only error complained of.

The learned counsel of appellant make a strong ap-

peal to us, as has often before been made to this court, to overthrow the long-established rule that this court will not undertake to weigh the evidence where there is a conflict and where, as is claimed here, that the preponderance thereof is against the finding of the jury and ventures the prediction that the time will come when this court will overthrow that rule.

It must be confessed that the rulings of this court on the point have not been entirely harmonious. Out of the whole number of cases, amounting to about 150, there have been the following cases holding that this court, in extreme cases, can and will reverse the judgment of the trial court on the weight of the evidence. *Toledo, etc., R. W. Co.* v. *Goddard,* 25 Ind. 185; *Martin* v. *State,* 28 Ind. 310; *Batterson* v. *State,* 63 Ind. 531; *Jeffersonville, etc., R. R. Co.* v. *Bowen,* 49 Ind. 154.

And *Smith* v. *Kruger,* 33 Ind. 86, recognized the right of this court to reverse on the weight of the evidence, but this court refused to reverse because it could not say that the finding was against the weight of the evidence. All the other cases in this court, too numerous to cite here, and, as before observed, nearly 150 in number, strongly affirm the rule that this court can not reverse on the weight of the evidence, and can not weigh the evidence. These cases will be found scattered all through our reports down to the present time.

In *Fort Wayne, etc., R. R. Co.* v. *Hasselman,* 65 Ind. 73, at page 76, this court strongly criticised *Toledo, etc., R. W. Co.* v. *Goddard, supra,* first quoting the following extract from that case: ''We do not ignore the rule so repeatedly laid down by this court, that we will not reverse a cause upon the mere weight of evidence. The general rule is that if there is evidence from which the jury might reasonably find or infer a fact, and they find accordingly, this court will not disturb the verdict be-

cause there is other evidence in conflict with that on which the finding is based. But where the evidence in support of the finding is clearly and overwhelmingly, or conclusively contradicted, it would be a reproach to the law, and a flagrant outrage upon the rights of parties to refuse to disturb the verdict, simply because it had been found by a jury.''

The criticism then proceeds: ''No one can find fault with the theory of the rule or of the exception thereto, so clearly stated by the distinguished judge, who wrote the opinion of the court, from which the extract cited was taken. Practically, however, the exception to the rule can not be safely used. For, how can this court or its judges possibly know, that the evidence in support of the verdict or finding has been 'clearly and overwhelmingly, or conclusively contradicted?' To arrive at such a conclusion, must we not weigh the evidence? If so, how can we, as an appellate court, by merely reading the written evidence, without any personal knowledge of the intelligence or character of the witnesses, or any of those living *indicia* before us by which men ordinarily judge of the truthfulness and credibility of evidence, determine that the evidence in support of the verdict or finding has been 'clearly and overwhelmingly, or conclusively contradicted?' We know of no rule or measure by which an appellate court can be safely guided, when it undertakes to determine such a question.

''Whether or not the evidence in any case is clear, or overwhelming, or conclusive, is a question for the jury trying the cause, and the judge presiding at such trial. When a jury have passed upon this question, and returned their verdict, and when the court, under whose eye and within whose hearing the evidence has been introduced and the cause has been tried, has refused to disturb the verdict upon the weight or sufficiency of the

evidence, we are clearly of the opinion, that it is neither our province, nor our duty, to reverse the judgment of the trial court merely because it may seem to us, from our reading of the record, that 'the evidence in support of the finding is clearly and overwhelmingly, or conclusively contradicted.' "

The reason most frequently given in the decisions of this court for the rule that this court can not weigh the evidence, and therefore can not reverse for the reason that the preponderance of the evidence seems to be against the finding or verdict, is that the opportunities and means of the court and jury trying the cause are so vastly superior to those of this court, they being able to see the witnesses face to face, to observe their conduct, appearance and demeanor on the witness stand, and thus judging of their intelligence, fairness and candor and many other means of weighing evidence that this court can not have, that it is deemed safer to leave that duty to be performed exclusively by them. But the sounder and more substantial reason is that the Legislature has expressly limited the jurisdiction of this court on appeal to the correction of errors of law.

The criminal code provides that "Upon the appeal, any decision of the court or intermediate order made in the progress of the case may be reviewed." 1 Burns R. S. 1894, section 1954, R. S. 1881, section 1881.

But the criminal code makes no provision for an assignment of errors. This court, ever since the enactment of the civil and criminal codes, in 1852, which have been carried forward into the revision of 1881, a period of over forty years, has construed the criminal code to require an assignment of errors the same as in civil cases. *Sturm* v. *State,* 74 Ind. 278; *Dye* v. *State,* 130 Ind. 87.

The civil code provides that "No pleadings shall be

required in the Supreme Court upon an appeal, but a specific assignment of all errors relied upon to be entered on the transcript in matters of law only. * *" 1 Burns R. S. 1894, section 667, R. S. 1881, section 655.

By this express statutory enactment, our jurisdiction in the consideration of questions on appeal is limited to errors of law only. That excludes from our consideration on appeal errors of fact. It was not so under our former practice. The code of 1843 provided that in assignments of error in this court, "The plaintiff, except in cases of wills, shall assign errors in matters of law only; in cases of wills the plaintiff may assign errors upon matters of fact as well as matters of law." R. S. 1843, section 54, p. 634.

In chancery causes this court weighed the evidence and made a final disposition of the cause upon the merits. *Gale* v. *Grannis,* 9 Ind. 140; *Leach* v. *Leach,* 10 Ind. 271.

The correction of errors of fact into which a jury may fall has been confided by our present code exclusively to the trial judge. *Cincinnati, etc., R. R. Co.* v. *Madden,* 134 Ind. 462 (470).

If there is no evidence to support the verdict or finding, or if there is no evidence to support any fact essential to the support of the finding or verdict, then such finding or verdict is an error of law which may be reviewed and corrected in this court. *Roby* v. *Pipher,* 109 Ind. 345; *Kitch* v. *Schoenell,* 80 Ind. 74; *Butterfield* v. *Trittipo,* 67 Ind. 338; *Robinson Machine Works* v. *Chandler,* 56 Ind. 575; *Cleveland, etc., R. W. Co.* v. *Wynant,* 134 Ind. 681; *Keiser* v. *Beam,* 117 Ind. 31; *Moellering* v. *Kayser,* 110 Ind. 533; *Vaughan* v. *Godman,* 103 Ind. 499.

When the evidence is conflicting, and the jury find

against the clear preponderance thereof, then the verdict or finding is not sustained by sufficient evidence within the meaning of the sixth subdivision, section 568, 1 Burns R. S. 1894 (R. S. 1881, section 559), authorizing a new trial. That constitutes an error of fact and not of law. It is the bounden duty of the trial judge to correct such error. *Cincinnati, etc., R. R. Co.* v. *Madden,* *supra.*

When he overrules the motion for a new trial based on that ground, he thereby says to us that with all his superior means of determining the weight of the evidence after calmly reviewing it, he is of opinion that the preponderance thereof fully sustains the verdict or finding. In such a case the Legislature has withheld from us the power to review his acts. And this power was evidently withheld for the manifest reason that the jury and trial court have so much better means and opportunities of weighing the evidence than this court can have.

The act of the Legislature in withholding the power from this court to retry the questions of fact is in harmony with the whole spirit and policy of the law and our system of jurisprudence. The policy of the law is to give every litigant one fair trial of his cause, and no more. When the trial court makes a mistake and commits an error of law against him, if it be materially prejudicial or harmful to his rights, then he has not had his one fair trial, and it is the duty of the trial court to grant him a new trial, and if it refuse to do so, this court can, for the error of law, reverse and order a new trial. To confer the power on this court, to retry the question of fact, would be a violation of that policy, by giving each litigant a right to two fair trials instead of one. The good order and peace of society forbids the opening up of controversies that have been once tried and adjudicated in a fair trial. Certain exceptions have been made by

statute where the title to real estate is involved. If a retrial of the question of fact is dictated by good policy, why submit it to triers no better qualified on the second than on the first trial? The court of last resort is supposed, by their learning and experience in the law, time and opportunities of library and books, to be better prepared than the trial court to ascertain what the law is. But, on mere questions of fact, they are not supposed to be any better qualified than the jury and the trial court to ascertain what the facts are, if even the evidence were brought before them the same as before the trial court. Be the policy of the statute and the law wise or unwise, certain it is that the power to retry questions of fact on appeal has not been conferred on this court. Therefore, when counsel ask us to overthrow the rule, they ask us to invade the province of the Legislature, as well as to overrule a line of decisions of this court of the longest standing and the most numerous to be found, perhaps, in support of any other rule of the court.

The evidence shows, without any doubt, that the appellant shot the deceased through the heart with a revolver, from which he immediately died. But it is contended that the killing was done in self-defense, or, rather, done in the defense of the appellant's brother from an attack by the deceased on his brother.

There was evidence from which the jury could have fairly inferred that appellant and his employer, Boyer, had very bitter feeling against the deceased and his son, and that appellant had designed to bring on a conflict; that appellant, actuated by that bitter feeling, had prepared himself with the revolver, and had procured his brother to come from a neighboring town to aid him, if necessary, in the conflict; that he, without provocation or excuse, except his previously formed ill feeling, brought on the conflict by striking the son of the de-

ceased, knocking him off the sidewalk, and his employer further added to the provocation of the deceased by also knocking the same son off the sidewalk, whereupon the father, the deceased, came into the fight with a knife in his hand; thereupon appellant's brother sprang at the deceased with violence, and they engaged in a momentary struggle. The deceased struck him with his knife, drawing blood, but making no serious wound; appellant's brother then withdrew from the conflict. Thereupon appellant's employer, Boyer, rushed at the deceased, drew a revolver at him and ordered him to stand back; thereupon the deceased backed off several steps, stopped and stood still.

In the meantime, appellant stood in his place observing all these movements, and while deceased was standing still and doing nothing and saying nothing appellant sprang forward and in loud voice said, "give it to them," and shot the deceased through the heart and then fired at him two other shots. The evidence ·fully justified the jury in believing that there was no occasion to shoot at the time he did in defense of his brother. If there was any occasion to fear harm from the deceased to appellant or his brother at the time he fired the fatal shot it was appellant's duty to withdraw from a conflict which the evidence justified the jury in finding that he had wrongfully brought on. Though the evidence might have justified the jury in believing that the deceased was not free from fault, so the evidence also warranted them in finding that appellant and his brother were not free from fault.

In *Story* v. *State*, 99 Ind. 413, at page 414, it is said: "It is established law that a man who takes another's life must be himself without fault, or he can not go acquitted upon the ground of self-defense. The authorities qualify the statement of the right of defense with the

phrase, 'one who is himself without fault,' and it is proper for the trial court to put into its instructions that phrase, or one of equivalent meaning. * * * Where both parties are in the wrong neither can justify the taking of life without retreating," citing, *McDermott* v. *State*, 89 Ind. 187; *Presser* v. *State*, 77 Ind. 274; *Runyan* v. *State*, 57 Ind. 80 (26 Am. R. 52); *Wall* v. *State*, 51 Ind. 453; *Kingen* v. *State*, 45 Ind. 518; *State* v. *Hays*, 23 Mo. 287; Horrigan & Thompson Cases Self-Defense, 492; 1 Bish. Crim. L., section 865.

"Where both parties are in the wrong, neither can justify the taking of life without retreating. Mr. Bishop thus states the law. 'The cases in which this doctrine of retreating to the wall is commonly invoked, are those of mutual combat. Both parties being in the wrong, neither can right himself except by 'retreating to the wall.' When one, contrary to his original expectation, finds himself so hotly pressed as to render the killing of the other necessary to save his own life, he is guilty of a felonious homicide if he kills him, unless he first actually puts into exercise this duty of withdrawing from the place. 1 Bish. Crim. L., section 870."

In *Barnett* v. *State*, 100 Ind. 171, a case very much like the present, where the appellant was convicted of voluntary manslaughter on an indictment charging him with murder in the first degree and sentenced to the State's prison for ten years, this court, at page 173, said: "It must be clear that we can not reverse the judgment on the weight of the evidence. Indeed, had the conviction been for a higher grade of crime, with the corresponding severe penalty, we could not reverse the judgment upon the evidence in the record. There is scarcely plausible ground here, in our judgment, for a claim that the shooting was in self-defense." This language is exactly applicable to the present case.

The following instruction is complained of in the motion for a new trial:

"20. In determining the weight to be given the testimony of the different witnesses you should take into account the interest or want of interest they have in the case, their manner on the stand, the probability or improbability of their testimony with all other circumstances before you which can aid you in weighing their testimony."

The objection urged to this instruction is that it invades the province of the jury in that it in effect tells them, as a matter of law, that a witness who is interested in the event of a suit, is entitled to less credence than one who is not. But we do not think that is the substance or import of the instruction at all in any proper sense.

The instruction amounts to no more than a statement that it is the duty of the jury in determining the weight to be given to the testimony of the witnesses to consider all the evidence bearing on that question, that is, their interest or want of interest in the case, their manner on the witness stand, the probability or improbability of their testimony with all the circumstances in evidence, which may aid them in weighing such testimony.

It is conceded by the learned counsel for appellant that the instruction was copied from an instruction approved by this court, and held good in *Anderson* v. *State*, 104 Ind. 467, at page 472.

But he contends that the authority of that case has been materially weakened by other cases in conflict with it in this court.

*Greer* v. *State*, 53 Ind. 420, is the first case cited as establishing the contrary doctrine. The language of the instruction there held to invade the exclusive province of the jury in estimating the weight of the evidence was

that: "One interested will not, usually, be as honest and candid as one not so."

The next case is *Veatch* v. *State*, 56 Ind. 584, at page 586, where an instruction in the exact same language was. condemned as an invasion of the province of the jury.

The next case relied on by appellant is *Nelson* v. *Vorce*, 55 Ind. 455, where the instruction condemned as such invasion is: "The evidence of parties to the action, and those related to them, as their sons and daughters, is not entitled to as much weight as the evidence of disinterested witnesses."

The part of the instruction condemned in *Hartford* v. *State*, 96 Ind. 461 (467), also cited by appellant, is: "The jury is to take the fact into consideration (that the witness is the defendant) and if, on so doing, the jury is satisfied that his testimony is true, they may give· it all the weight due to the testimony of any other witness."

The court said: "The latter part of the instruction  * must be held erroneous. The jury were informed that, if they were satisfied that the appellant's testimony was true, they might give it all the credit due to the testimony of any other witness. If the jury were satisfied that his evidence was true, it was their duty to believe and act upon it without reference to other testimony. In such case it would not be merely entitled to the weight due the testimony of any other witness, but would be entitled to full belief, though contradicted by the evidence of other witnesses."

This, like the other cases quoted from, was a direct attempt on the part of the trial court to control the jury in the amount of weight they should give to certain evidence and was usurping the exclusive functions of the jury. The next case cited by appellant, *Rozell* v. *City of Anderson*, 91 Ind. 591, is not in point.

The instruction condemned in *Unruh* v. *State, ex rel.*,

105 Ind. 117, related to certain admissions of the parties which had been put in evidence. · The court told the jury, in substance, that admissions of a certain described character would be entitled to very great weight. And, on the other hand, that certain other described admissions should have but little reliance placed upon them. Such an instruction was held to be an invasion of the jury's exclusive right to judge of the credibility and weight of evidence.

The next case cited by appellant as conflicting with *Anderson* v. *State, supra,* is *Bird* v. *State,* 107 Ind. 154.

The instruction there condemned is as follows: "The defendant has testified in his own behalf. In weighing his testimony the fact that he is the defendant, and, therefore, deeply interested in the result of the prosecution, should not be overlooked, but it does not follow that because of his interest you should disregard his testimony or refuse to give him credit. Innocent men are sometimes charged with the commission of grave offenses. If the defendant's testimony, when compared with all the other facts and circumstances in evidence, is consistent and harmonious, it may have a controlling weight in deciding the case, but the weight it shall have is a matter left wholly to your consideration."

This court said: "This instruction can not be sustained. Very clearly it discredits the testimony of the appellant. It is equivalent to telling the jury that it was their duty to keep in mind the fact that appellant was the defendant, and that his testimony, for that reason, could not be taken as of controlling weight, unless consistent with all the facts and circumstances in evidence. The other facts and circumstances, doubtless, were inconsistent with his testimony. Otherwise, his testimony would not have been material to him; and otherwise, doubtless, he would not have been convicted. His testimony, with-

out doubt, was intended to explain, or to meet and over-throw, the adverse facts and circumstances in evidence, and if it could be of controlling weight in the decision of the case only in the event that it was consistent with those facts and circumstances, it could be of no avail to him in the way of a defense.   *   *   *   He has a right to ask that his testimony, alone and unsupported, shall be taken as of controlling weight in the case if the jury think proper, whether it is consistent or inconsistent with all the other facts and circumstances in evidence.''

This instruction was, therefore, condemned, not be-cause it told the jury that in determining the weight of the defendant's testimony they ought to take into con-sideration all the facts and circumstances in evidence in relation thereto, but because it went far beyond that, and told them, in effect, that his testimony could not be of controlling weight unless consistent with all the facts and circumstances in evidence. That is, if his testi-mony was contradicted by facts and circumstances in evidence it could not have controlling weight. That was telling them how much weight it should have and was a a matter exclusively within the province of the jury to determine, and hence the court had, by the instruction, invaded the exclusive domain of the jury. And such was the case in each of the instructions condemned in the cases we have reviewed above. But that was not the case made by the instruction approved in *Anderson* v. *State, supra,* and the instruction in the case at bar. These instructions simply told the jury that in deter-mining the weight to be given to the testimony of the various witnesses, they should consider all the facts and circumstances in evidence on that subject, without at-tempting to control them in estimating the weight they should assign to any particular fact or facts, or to any particular circumstance or circumstances in evidence.

These cases are not in conflict with *Anderson* v. *State, supra,* as appellant's learned counsel seem to suppose.

The instruction condemned in the last case cited by appellant as in conflict with *Anderson* v. *State, supra,* is found in *Duvall* v. *Kenton,* 127 Ind. 178 (180), reading as follows: "The opinions of experts are received in evidence, and may be considered and weighed from a consideration of the skill of such experts and the truth of the hypothesis on which his opinion is based. The jury, in judging of the weight of expert evidence should consider the character of the witness and the interest, if any, he has in the case."

The only reason assigned for condemning this instruction is as follows: "The jury were plainly told that if any of such witnesses were interested in the event of the suit, that fact *must* be considered by them in weighing such testimony. From the circumstances attending the trial of the cause, the jury may have reached the conclusion that some of the expert witnesses called by the appellant felt an interest in the result of the trial."

Suppose they did feel such interest, was that any reason why the jury ought not to consider such interest in judging of the weight of their evidence? But the opinion emphasizes the word "should" by converting it into the word "*must*," and italicizes it. That only makes it imperative that such interest be considered by the jury in judging of the weight of such testimony. That does not tell them how much, if any, that interest ought to detract from their testimony, but leaves that wholly to the exclusive determination of the jury. To consider evidence is one thing, and to determine its weight and force is another, and quite a different thing. If the court may not tell the jury that it is a legal obligation resting on them, under their oaths, to consider all the evidence adduced before them, then it follows as a log-

Deal *v*. The State.

ical sequence that they are not bound to give any consideration whatever to the evidence introduced before them under the permission of the court.

The court decides, as matter of law, what is proper to be considered by them on the admission of each item of evidence before them. If they may decline to even consider the evidence, which is the logical result of the decision last referred to, then they may usurp the functions of the court.

The jury can no more invade the province of the court than the court can that of the jury. It is true, in criminal cases, the jury are not bound by the instructions of the court as to the law as in civil cases, but may determine it for themselves contrary to the views of the court. But the province of the court to instruct them as to the law is the same in both civil and criminal cases, the only difference being, as before observed, the jury are not bound by the court's instructions in criminal as they are in civil cases.

The case of *Duvall* v. *Kenton, supra,* is not in harmony with *Anderson* v. *State, supra,* nor does it undertake to overrule that case, and while it may have resulted in a just conclusion in that particular case, yet its reasoning can not be sanctioned and approved. The case may be sustained on the ground that the expert witnesses, as a class, were singled out and discredited. *Lynch* v. *Bates,* 139 Ind. 206.

The jury can not lawfully escape the duty of considering the evidence, and it is not error in the court to tell them so, but the court can not, without error, tell them how much weight or force they ought to assign to such evidence or any part thereof.

*Anderson* v. *State, supra,* is directly supported, and the ruling therein declared is substantially affirmed in

*Randall* v. *State*, 132 Ind. 539; *Fisher* v. *State*, 77 Ind. Ind. 42.

We adhere to the ruling in *Anderson* v. *State, supra*. But if the instruction in the case before us were ever so erroneous, the appellant has waived the error by asking the court to give substantially the same instruction which the court did, in compliance with his request.

We are of opinion that the court did not err in giving instruction twenty.   ·

We are informed by the appellant's counsel that Dayton Alderman was called as a juror, and, upon his *voir dire*, having testified that he possessed all the other necessary qualifications to sit as a juror in the case, stated that he had conscientious scruples that would prevent him from affixing the death penalty, for which the State challenged him, and the court sustained the challenge over appellant's objection and exception.

The appellant urges this ruling as error, but we find nothing in the record to prove this statement of counsel except the recital of the fact in the appellant's motion for a new trial.   Such recitals must be shown to be true by the record proper or by bill of exceptions outside of the motion for a new trial.   *Indianapolis, etc., Co.* v. *First National Bank, etc.*, 33 Ind. 302; *Skillen* v. *Skillen*, 41 Ind. 122; *Hopkins* v. *Greensburg, etc., Turnpike, Co.*, 46 Ind. 187; *Vawter* v. *Gilliland*, 55 Ind. 278; *Hyatt* v. *Clements*, 65 Ind. 12; *Clouser* v. *Ruckman, Admr.*, 104 Ind. 588.

The ruling complained of is not presented by the record.

It is but just to appellant's learned counsel to say that on the oral argument they expressly stated and admitted that this alleged error was not presented by the motion for a new trial, and, therefore, they expressly waived the same and did not urge it.

The next point made for a reversal is the ruling of the trial court in excluding certain evidence offered by appellant. He placed on the witness stand one R. B. Payne and asked him the following question: ''What, if anything do you know about his (deceased) having chopped any one in the head with a hatchet?'' to which question the State objected, and the court sustained the objection and refused to permit the witness to answer the question. Afterwards, without asking the witness any other question, the appellant made the following proposal: ''The defendant offers to prove by the witness on the stand that about twelve years ago, in the town of Antwerp, in Paulding county, Ohio, being the county in which Payne is situated, that old man, Hugh Crye, without provocation, cut and chopped one Crandall on the head with a hatchet. In making this offer, the defendant's counsel state to the court that they will be unable to show that knowledge of this act was communicated to the defendant before the death of Hugh Crye, Sr.''

The State objected, and the record then states that ''the objection of the State is sustained, and the offer of the defendant is overruled, and to which ruling the defendant then and there excepted.''

It is well settled by the decisions of this court that the foregoing exception does not raise the question of the admissibility or competency of the proposed testimony.

In *Judy* v. *Citizen*, 101 Ind. 18, 22, it is said: ''A bill of exceptions in the record recites, that at the proper time the defendant 'introduced upon the witness stand one Benjamin Judy, the defendant, a competent witness, and by him offered to prove the following facts: 1. That the defendant was the owner in fee of the premises in controversy.' This is followed by six additional propositions, which the bill states the defendant offered to prove

by the witness. This is followed by like propositions made with respect to his other witnesses. These offers were, on objection made by the plaintiff, rejected by the court, and in this it is claimed the court erred. It does not appear that any questions were propounded to either of the witnesses, nor is there any statement of the particular facts which it is claimed either of them would have testified to. Nothing further appears except that a witness was in each case placed on the stand, whereupon the defendant submitted to the court a list of propositions or conclusions which it was proposed to establish by the testimony of each witness. This presents no question for our consideration. *Higham* v. *Vanosdol, post*, p. 160, and cases there cited.

"Questions upon the refusal to admit evidence from a witness can only be saved by propounding to the witness some pertinent question, and, upon objection made, stating to the court, as it may direct, the testimony or facts which the witness would detail in answer thereto."

We do not mean to intimate an opinion that the facts proposed would have been competent or admissible had the offer been sufficient to raise the question. We need not and do not decide that question. See *Smith* v. *State*, 132 Ind. 145; *Pratt* v. *State*, 56 Ind. 179; *Bowlus* v. *State*, 130 Ind. 227; *Wood* v. *State*, 92 Ind. 269.

The last point made is that the court erred in overruling appellant's objection to the competency of certain facts testified to on behalf of the State by the witness Wyatt. The court permitted him to detail a conversation he had heard on the night of the homicide and a few minutes thereafter between a man supposed to be the appellant and a woman in a house nearby.

The witness stated: "I didn't see him; I couldn't say where he was, or who it was. He was in the house some place. I was standing at the front door. It sounded

Deal *v*. The State.

like Joe Deal's voice.   He said he had shot a woman in the arm and killed a man.   I will have to get; here is the gun.''

The objection to this evidence is that the State had not made sufficient proof that the man who made the statements testified to by the witness was the defendant.   If it was not the defendant it was mere hearsay, and hence incompetent.   But the evidence alone had a slight tendency to prove that it was the defendant that made the statements testified to.   When evidence tends to prove a fact, however slight that tendency may be, it is admissible.   That is the only guide the court can have in determining the admissibility of evidence.   If the fact which the proposed evidence tends to prove is material to the issue, the court is legally bound to admit it, even though its tendency in that direction is exceedingly slight.   This is so for several reasons; one is that a party can not be expected or required to prove the fact by a single item of evidence; and another reason is that the jury are the exclusive judges of the weight to be given to each item of evidence.   There were other circumstances in evidence considered in connection with Wyatt's testimony amply sufficient to justify the jury in believing that the man that made the statements, testified to, was in fact the defendant.   But if it were otherwise, the testimony was utterly harmless, because there was not a particle of controversy in the evidence that the defendant did shoot and kill Hugh Crye, Sr., on that evening.

We find no available error in the record.

The judgment is affirmed.

Filed Feb. 26, 1895.