## HOWARD v. STATE OF INDIANA.

[No. 23,854.   Filed June 2, 1921.   Rehearing denied October 25, 1921.]

1. APPEAL.—*Briefs.—Waiver of Error.—Instructions.*—The assignment of error alleged in a motion for a new trial that the court erred in giving and in refusing to give certain instructions is waived by appellant's failure to present any point or authority in his brief in support of his assignment.   p. 234.

2. INDICTMENT AND INFORMATION.—*Duplicity.—Statute Making Distinct Acts Punishable.—Proof.*—Where a statute makes punishable the doing of two or more distinct acts, a person who in one transaction commits all of such acts violates the statute but once and incurs only one penalty, yet the doing of one of the specified acts is equally a violation of the statute; therefore, an indictment on such a statute may allege, in a single count, that the defendant did as many of the forbidden acts as the pleader chooses, employing the conjunction "and" where the statute has "or" and it will not be double and will be established by proof of any one of them.   p. 236.

3. INDICTMENT AND INFORMATION.—*Affidavit.—Gaming.—Surplusage Need Not be Proved.*—An affidavit, charging that defendant kept a building to be used and occupied for gaming "and" permitted a certain named person and others unknown to play at certain games for money and other things of value, merges into a single offense of keeping a gambling house, and the allegation that the defendant permitted a certain named person and others unknown to play at certain games for money and other things of value is surplusage and need not be proved to sustain a conviction.   p. 236.

4. CRIMINAL LAW.—*Appeal.—Review.—Evidence Susceptible of Conflicting Inferences.*—Where the circumstances are of such character that the jury might reasonably have drawn an inference of guilt of the accused, the question is one of fact for the jury and trial court, and cannot be reviewed on appeal as it is not within the province of the Supreme Court to determine what inference the jury should have drawn.   p. 237.

5. CRIMINAL LAW.—*Appeal.—Review.—Evidence.—Sufficiency.—Question of Fact for Jury.*—If there be no evidence to support the verdict or finding the error is one of law which may be reviewed and corrected on appeal; but if the jury find against the clear preponderance of the evidence, even in case of conflict, it is the duty of the trial court to correct such error by granting a new trial on the ground that the verdict is not sustained

by sufficient evidence, in such case the Supreme Court having no power to review. p. 237.

6. CRIMINAL LAW.—*Appeal.—Review.—Evidence.—Sufficiency.— Scope of Review.*—In reviewing the sufficiency of the evidence to sustain a verdict, only evidence in favor of the prevailing party, with the inference and conclusions to be drawn therefrom, can be considered. p. 238.

7. CRIMINAL LAW.—*Appeal.—Admissibility of Evidence.—Waiver of Objections.*—Where special objections are stated to the admission of evidence, the implication is that there are no other objections, or if others, they are waived. p. 243.

8. CRIMINAL LAW.—*Appeal.—Presenting Questions for Review. —Objections to Admission of Evidence.*—The particular ground of objection to the admission of evidence must be stated to the trial court and the same ground of objection must be brought before the Supreme Court to present any question for consideration on appeal. p. 243.

9. CRIMINAL LAW.—*Appeal.—Harmless Error. — Admission of Evidence.*—In a prosecution for keeping a place for gaming, the erroneous admission in evidence of transcripts of a city court on pleas of guilty and conviction of persons found in the place and on the date named in the affidavit was harmless, where the fact was conclusively established by other testimony to which no objection was made. p. 243.

From Marion Criminal Court (50,098) ; *James A. Collins*, Judge.

Prosecution by the State of Indiana against Beverly Howard. From a judgment of conviction, the defendant appeals. *Affirmed.*

*Robbins & Weyl, Jackiel W. Joseph* and *Henry Abrams*, for appellant.

*U. S. Lesh*, Attorney-General, and *Dale F. Stansbury*, for the state.

WILLOUGHBY, J.—The appellant was tried by jury in the criminal court of Marion county, Indiana, upon an affidavit based upon §2466 Burns 1914, §2079 R. S. 1881, which reads as follows:   "Whoever keeps a building, room, arbor, garden, booth, shed, tenement or canal boat, wharf boat or other water craft, to be used or

occupied for gaming, or knowingly permits the same to be used or occupied for gaming, or whoever, being the owner of any building, room, arbor, garden, booth, shed, tenement or canal boat, wharf boat or other water craft, rents the same to be used or occupied for gaming, shall, on conviction, be fined not less than ten dollars nor more than five hundred dollars, to which may be added imprisonment in the county jail or workhouse not less than ten days nor more than six months."

To the affidavit filed against him the appellant entered a plea of not guilty, and upon the trial of the issue thus made, the jury rendered a verdict of guilty, as charged in the affidavit and that he be fined $10 and imprisoned on the State Farm for a period of thirty days. Judgment was rendered on this verdict and from such judgment appellant appeals and assigns as error that the trial court erred in overruling his motion for a new trial.

In appellant's motion for new trial he alleges that the court erred in giving certain instructions to the jury and refusing to give certain instructions tendered by appellant and requested to be given, but 1. in appellant's brief, under the heading of "Propositions, Points and Authorities," there is no discussion either of alleged errors in giving instructions or in refusing to give instructions. Any question which the appellant fails to support by points and authorities in his brief is waived. *Vandalia R. Co.* v. *Mizer* (1916), 184 Ind. 680, 112 N. E. 522; *Chicago, etc., R. Co.* v. *Ader* (1915), 184 Ind. 235, 110 N. E. 67; *Indiana Quarries Co.* v. *Farmer* (1915), 184 Ind. 411, 110 N. E. 549; *McMurran* v. *Hannum* (1916), 185 Ind. 326, 113 N. E. 238; *Powell* v. *Jackson* (1916), 60 Ind. App. 597, 111 N. E. 208.

The only questions presented in appellant's brief are the sufficiency of the evidence and alleged error in ad-

mitting certain exhibits that were offered by the state and admitted in evidence. No objection is made by appellant to the sufficiency of the affidavit or to the form thereof, but in discussing the sufficiency of the evidence to sustain the verdict appellant insists that the affidavit charges two separate offenses and that in order to convict, it was necessary for the state to prove beyond a reasonable doubt that the defendant was guilty of both of the offenses.

The charging part of the affidavit upon which the appellant was tried is as follows, to wit: "That Beverly Howard, late of said city, county and state on or about July 30, 1919, at and in the city, county and state aforesaid, did then and there unlawfully keep a certain building to wit: 1118 E. 16th St., there situate, to be used and occupied for gaming and then and there unlawfully and knowingly permitted William Hall and others unknown to play at certain games for money and other articles of value."

In Davis v. State (1885), 100 Ind. 154, the court in passing on a motion to quash an indictment in substantially the same form as the indictment in this case, and based upon a similar statute, said: "The purpose of the statute is to suppress gambling houses. If a person keeps a house to be used for gaming, he violates the statute, and may be convicted. If a person knowingly permits his house to be used or occupied for gaming, he, that far, makes it a gambling house, violates the statute, and may be convicted. In this sense, the offences are separate, and may be separately prosecuted. And yet, in another sense, the offenses constitute the one offence of violating the statute against gambling houses. And in this sense, as was said in the case of Sowle v. State, 11 Ind. 492, the offence of permitting the gambling is merged in the offence of keeping a gambling house."

In the same case, *Davis* v. *State, supra,* the court in quoting from *Byrne* v. *State* (1860), 12 Wis. 577, says: " 'The rule is well settled that, where a statute makes either of two or more distinct acts connected with the same general offense and subject to the same measure and kind of punishment, indictable separately as distinct crimes when each shall have been committed by different persons or at different times, they may, when committed by the same person at the same time, be coupled in one count, as 'constituting altogether but one offense. In such cases the several acts are considered as so many steps or stages in the same affair, and the offender may be indicted as for one combined act in violation of law; and proof of either of the acts mentioned in the statute and set forth in the indictment will sustain a conviction. * * *' "

A statute often makes punishable the doing of one thing or another, sometimes thus specifying a considerable number of things. Then, by proper and ordinary construction a person who in one transaction does all, violates the statute but once, and incurs only one penalty. Yet he violates it equally by doing one of the things. Therefore the indictment on such a statute may allege, in a single count, that the defendant did as many of the forbidden things as the pleader chooses, employing the conjunction "and" where the statute has "or" and it will not be double, and it will be established at the trial by proof of any one of them. 1 Bishop, New Criminal Procedure §436.

In the instant case we hold that the offense of permitting gambling is merged in the offense of keeping a gambling house and that the allegation in the affidavit that the defendant "unlawfully and knowingly permitted William Hall and others unknown to play at certain games for money and other articles of value" is surplusage and need not be proved

to sustain a conviction. *Dormer* v. *State* (1850), 2 Ind. 308; *State* v. *Pancake* (1881), 74 Ind. 15.

The appellant quoting from *Hamilton* v. *State* (1895), 142 Ind. 276, 41 N. E. 588, says: "Where the evidence leaves standing some reasonable hypothesis of innocence there can be no conviction, and when the record discloses that fact to the appellate tribunal, a judgment of conviction cannot be affirmed." *Hamilton* v. *State, supra,* has been overruled by *Lee* v. *State* (1901), 156 Ind. 541, 60 N. E. 299.

In *Lee* v. *State, supra,* it is held that where the circumstances are of such a character that the jury might reasonably have drawn an inference of guilt of the accused, the question of guilt becomes one of 4. fact for the determination of the jury and trial court and is not open to review on appeal. Where the circumstantial evidence in a case is of such a character that two conflicting inferences may be reasonably drawn therefrom, one favorable to, or tending to prove the guilt of the accused, and the other favorable to his innocence, then under such circumstances, it is not within the province of the Supreme Court to determine which inference ought to have controlled the jury.

In *Deal* v. *State* (1895), 140 Ind. 354, 39 N. E. 930, it is held that the jurisdiction of the Supreme Court on an appeal is limited to errors of law only, and it has no jurisdiction to pass upon errors of fact; the correction of errors of fact into which a jury may fall belongs exclusively to the trial court. The Supreme Court cannot retry questions of fact.

If there be no evidence to support the verdict or finding, or if there be no evidence to support any fact essential to the support of the verdict or finding, 5. such verdict or finding is an error of law which may be reviewed or corrected on appeal. If the jury find against the clear preponderance of the evi-

dence, even in a case of conflict, that constitutes an error of fact, and not of law; and it is the duty of the trial court to correct such error by granting a new trial on the ground that the verdict is not sustained by sufficient evidence. In such a case the Supreme Court has no power to review such acts. The rule that this court will not weigh the evidence applies whether the same is direct, circumstantial, or both. *McCaughey* v. *State* (1901), 156 Ind. 41, 59 N. E. 169; *American Varnish Co.* v. *Reed* (1899), 154 Ind. 88, 55 N. E. 224.

In considering whether the evidence is sufficient to sustain a verdict only that evidence which was in favor of the prevailing party is considered. In this 6. case the state is the prevailing party and in determining whether the evidence is sufficient to sustain the verdict this court will consider only the evidence most favorable to the state, with the inferences and conclusions to be drawn therefrom and will not consider any evidence which contradicts this evidence of the state.

Edwin C. Ball, whose name is attached to the affidavit upon which this prosecution is based, testified substantially as follows: "I am a member of the police force of the city of Indianapolis. On the 27th day of July, 1919, in the morning I went to the corner of 16th and Alvord Sts. to the dry beer parlor known as 1118 E. 16th St. in the city of Indianapolis. Sergeant Russell, patrolmen Evert, Claud White and Walters went with me. We stopped at the back door and found it locked and later found it was barred. We stayed there for three or four minutes, listening and heard the clinking of money and heard the dice being shaken and rolled. Heard a man say 'shoot a dollar' and another man say 'a dollar it comes' and another man say 'a dollar it don't come.' I had Claud White lead off at a run from the north end of the building, which is the

.rear, to the door that faces south. There was a man sitting there on the front steps looking east on Sixteenth Street. Mr. White went by him on the run back through the bar-room and into the adjoining room. The bar runs north and south; the bar tender stands behind the bar and faces east. The adjoining room is east from the bar-room. There are two rooms of the same length as the bar-room. This was near the rear of the building. There is a door way between the bar-room and this room and the door was open. As we went into the building I saw a man behind the bar, James Reedy, and Beverly Howard was at the north end of the bar. I went on by them, and Claud White went in and grabbed a pair of dice from a man's hand and a two dollar bill off the table. I stood in the door, when they started out I drove them in. When I first noticed them in the room they were all grouped around a table. The room is comparatively small—about sixteen feet by twelve feet. Just one table in that room. It was an old pool table with the pockets torn out. The cloth was on it but there were no pockets—just the holes. There were two cues there. There were no tips on these cues. No cues in the rack, no players were playing pool there. There was considerable money scattered around the table. Everybody began grabbing money and sticking it in their pockets. I remained in the door. They started out the door where I was. I drove them back with a club. Then I saw them try to get the bar down from the door leading out from the rear, but by this time all the police officers were there. I sent in another man to hold the door and the bar in place. We arrested the men in there on the charge of gambling and visiting a gambling house. I have a record of the men. The record was made at that time. They were all arrested. I went back into the dry drink parlor. I saw the defendant in the dry drink parlor at that time,

Beverly Howard. I had a conversation with him. I asked Beverly Howard who was the proprietor. He said he was. I said 'all right, you consider yourself under arrest for keeping a gambling house.' He said 'Well, I am not proprietor now.' He said 'the fixtures are mine, but I am selling them to James Reedy.' That was all the conversation I had with him. I arrested James Reedy on that occasion. This I have testified about all occurred in Marion County, Indiana on July 27, 1919. It was Saturday night or Sunday morning about 2:10 when we made the arrest. It was a dry drink parlor and James Reedy was behind the bar. It was then I went in and took the names of the men I have given. These are the names I gave. They gave their true names so far as I know. I took down all of their names. I took them down on paper. This is a copy as the arrest slip goes with every prisoner. I got their names that night. I made the affidavit against Beverly Howard the next day after Monday (the 29th was Monday) on the 30th. I made it on the day it was dated. I signed the affidavit in this case. I have sworn to it. In that affidavit I put down one name and swore the others were unknown to me. At the time I swore to it I had this list of names. At the time I made the affidavit I did not remember the other names, however I had the information of the other names. I could have dug them up. At the time the arrests were made these slips were in the hands of the turnkey. I gave the name I could recall, I did not go upstairs to refresh my recollection."

Charles Russell testified as follows: "I am a member of the Indianapolis police force. On the morning of the 27th or 28th of July I went to Sixteenth and Alvord Streets with Lieutenant Ball. Met Lieut. Ball at Seventeenth and Columbia Ave. and we went down the alley and came in through the back way. We stopped for a

minute or two at the back door of the dry beer saloon. I was not close to it. I was four or five feet from it. Lieut. Ball and one or two of the others listened at the door. We went on around and made a run through the front door. White and Ball were in front of me. When I got into the back room the men were trying to get away from the pool table and get out the door. Lieut. Ball was holding the door from the back room into the dry beer parlor. I ducked by him and went to the door leading to the rear from this back room. These men were around the pool table. There was a stool in there, but I don't think there were any chairs. I did not see any money on the pool table. The other two officers went in first. I saw Beverly Howard in the dry beer saloon. I was in uniform. The man I was running with was in uniform. The others were not. We allowed the plain clothes men to go in first. I did not hear any conversation between Beverly Howard and Lieut. Ball. I was a patrolman then and have since become a sergeant."

Claud White testified as follows: "I am a policeman. I went on that night about 2 o'clock in the morning on the 27th of July, Lieut. Ball and myself and three or four patrolmen met patrolman Russell and two or three other patrolman at 17th and Columbia and we walked down through the alley and through some back yards and came up to this place at Sixteenth and Alvord Streets. We stopped and listened. We heard them in there say 'I will take that bet' another one say 'I bet you don't'—talk like that. We listened and heard money rattling and the roll of the dice dingling in their hands. I suppose it was dice. I didn't see them but I heard them. Then we arranged between ourselves to go in. I took the lead and Lieut. Ball was right behind me. I made a rush through the dry beer saloon through the

door which was open. We found a number of men around the pool table. A man named John Long was fixing to shoot the dice as I ran in. I said 'Give me those dice.' He looked around and by that time Lieut. Ball was at the door and they began to scoop up the money. I got a two dollar bill. I got the dice from John Long. There was money on the table but it was scooped up by the players. Lieut. Ball told them that they were under arrest. After we got them all rounded up and kind of reconciled I believe he came to the door and looked in. I do not remember hearing conversation between Lieut. Ball and Beverly Howard. This all happened in Marion County, Indiana. The money was silver and paper and I got a two dollar bill, that was the biggest piece of money that I saw."

The state introduced and read in evidence state's exhibits Nos. 1 to 18, inclusive, and each of them. The said exhibits being transcripts of the records of the city court of the city of Indianapolis of pleas of guilty and convictions thereon in cases of the state against certain persons who were arrested at the dry beer saloon known as 1118 E. Sixteenth St. in the city of Indianapolis July 27, 1919, when a raid was made upon said place by some of the police officers of the city of Indianapolis, together with the marginal entries on each of the said judgments of replevin bail by Beverly Howard. An examination of the record shows that the appellant made the following objection to the introduction of said exhibits, viz.: "The defendant objects to each of the record entries offered for the reason they are records of a proceeding to which this defendant is not a party and he is not bound by any adjudication of any of them, and it is not competent evidence."

Where specific objections are stated to the admission of evidence, the implication is that there are not others, or if others, that they are waived. The rule is that the

particular ground of objection must be stated to
7, 8. the trial court and the same ground of objection
brought before the appellate court, otherwise
there is no question presented for consideration on ap-
peal.   Elliott, Appellate Procedure §775.   See also,
*Stratton* v. *Lockhart* (1890), 1 Ind. App. 380, 27 N. E.
715; *Ohio & Miss. R. Co.* v. *Walker* (1888), 113 Ind.
196, 15 N. E. 234; *Musser* v. *State* (1901), 157 Ind.
423, 61 N. E. 1; *Underhill* v. *State* (1921), 190 Ind.
558, 130 N. E. 225.

It may be conceded that the record entries to which
appellant objected were not properly admitted but the
only thing which they tended to prove was that
9.   gambling was being conducted at the place named
in the affidavit, on the night of the raid by the
police.   By testimony to which no objection was made
and which is not contradicted or disputed, the fact is
established that gambling was going on in there at that
place, at the time of the raid.   The evidence could not
have harmed appellant.   See *Mass. Bonding, etc., Co.*
v. *State, ex rel.* (1921), *post,* 595, 131 N. E. 398.   There
is evidence tending to support every essential fact nec-
essary to sustain the verdict.   No reversible error is
shown in the record.   Judgment affirmed.