DENNISON ET AL. v. STATE OF INDIANA.

[No. 25,001.   Filed May 18, 1926.]

1. CRIMINAL LAW.—*On appeal in criminal case, court considers only the evidence favorable to state, with the reasonable inferences and conclusions that can be drawn therefrom.*—On appeal in a criminal case, the Supreme Court considers only the evidence favorable to the state, with the reasonable inferences and conclusions that can be drawn therefrom.   p. 668.

2. CRIMINAL LAW.—*That finding of jury as to age of convicted defendant was not sustained by evidence is not ground for reversal, as such finding is merely advisory as to the place of confinement.*—That finding of the jury as to the age of a convicted defendant was not sustained by the evidence is not ground for reversal, as such finding is merely advisory as to the place of confinement and any error made by the jury may be corrected by the board of managers with the consent of the Governor.   p. 668.

3. INTOXICATING LIQUORS.—*Evidence held sufficient to sustain conviction for having possession and control of a still and distilling apparatus and of using same for the manufacture of intoxicating liquor.*—Evidence held sufficient to sustain conviction for having possession and control of a still and distilling apparatus and of using same for the manufacture of intoxicating liquor, in violation of Acts 1923 p. 107.   p. 669.

From Dearborn Circuit Court; *Charles A. Lowe,* Judge.

Walter Dennison and Alois Geis were convicted of having possession of a still and distilling apparatus and of using same to manufacture intoxicating liquor, and they appeal. *Affirmed.*

*M. P. Hubbard* and *Wycoff & Wycoff,* for appellants.

*Arthur L. Gilliom,* Attorney-General, and *Frank L. Greenwald,* Deputy Attorney-General, for the State.

WILLOUGHBY, J.—The appellants were charged by affidavit in one count with unlawfully and feloniously having in their possession or control a still and distilling apparatus in Dearborn county, State of Indiana, on or about April 8, 1925, and that they did then and there unlawfully and feloniously use a certain still and dis-

tilling apparatus for the manufacture of intoxicating liquor in violation of the provisions of §1, ch. 33 of the acts of 1923, Acts 1923 p. 107.

On a plea of not guilty, the case was submitted to a jury for trial and the jury after hearing the evidence found the defendant Walter Dennison guilty and that he was twenty-eight years of age and found the defendant Alois Geis guilty and that he was thirty-two years of age. Judgment was rendered on this verdict that the defendant Geis be imprisoned in the Indiana State Prison for a period of not less than one year nor more than five years and that the defendant Dennison be committed to the custody of the board of trustees of the Indiana Reformatory and be confined by them according to law for a period of not less than one year nor more than five years.

The errors relied on for reversal are contained in the motion for a new trial and are as follows: (1) The verdict of the jury is not sustained by sufficient evidence; (2) the verdict of the jury is contrary to law.

The state introduced a witness who testified as follows: "My name is Emma Roof. I live on an eighty-one-acre farm in Dearborn county, State of Indiana, two miles southwest of St. Leon. Am single. My husband John Roof died a year ago in January. I have remained on the farm since with my two children, Clarence, twelve years old, and Wilbur, seven years old. I am acquainted with the defendants Dennison and Geis. Have known Dennison since the first part of January, 1925, and Geis for four or five years. Mr. Geis used to be a neighbor of ours. Now lives at Lawrenceville, about three miles away. Geis brought Dennison to my house about the first of January. He came to see if he could operate a still. The proposition was made in my kitchen with my two boys present. Mr. Dennison asked what I would charge to rent my cellar, and it was agreed

that I should have one hundred dollars for every run, meaning a set of forty barrels of mash. Mr. Geis had talked to me about it before he brought Dennison. They came in Dennison's Dodge touring car. Mr. Dennison went down and looked at the cellar and said it would be all right. There was but one entrance to the cellar, that being from the back porch. It has two windows. Several nights later, Mr. Dennison returned in the nighttime, between eight and nine o'clock, with another man whose name I do not know. They brought forty oak barrels and put them in the cellar, also a still. The next night Dennison and Geis brought from ten to twelve hundred pounds of sugar. The next night Dennison and the third man, whom I only know as Luther, came and carried the sugar upstairs and got the cellar ready, and straightened up the barrels. The next day all three men came and set the mash in the cellar. It took them two days to set it. They heated water in tubs on oil burners in the cellar, pumping the water from the well with a hundred foot hose. They first filled the barrels with cold water, put in a bucket of malt, a bucket of bran and seventy-five pounds of sugar to each barrel, and filled the barrels up with warm water, and let it set there from seven to nine days, and during this while they went home. At the expiration of the nine days, Dennison, Geis and Luther took turn about cooking the mash. The main cookers was Walter Dennison and Al Geis, mainly Walter Dennison. It took four hours to cook off four barrels, making seventeen to eighteen gallons of liquor. They made three runs altogether, one in January, one in February, and one in March. They could run from four to six barrels a day. After the liquor was finished, they loaded it up and what they did with it I do not know. Mr. Dennison was to pay for himself and Geis. They paid me for three runs. They threw the refuse

in the yard. They finished their last run on Thursday, April 2, and the place was raided the following Wednesday. The officers found eighty to one hundred gallons liquor, barrels and the still, hose and all things such as that. The same liquor was that made by Dennison and Geis and the same apparatus that they brought. Neither Dennison or Geis were there after April 2. They took away some liquor on the last day. I have lived on this farm about sixteen years. The house is about forty feet from the roadway. They would be there about twenty-one days in each month operating. I do not know the name of the third man except they called him Luther. He came in a Ford touring car with Ohio license. Never spent more than two days at a time at my home. I had never operated a still in my home until I knew Walter Dennison. The mysterious man was not an expert cooker. He did the managing, and was always present when the run was finished. I do not know whether I was arrested or not. I was put under $500 bond. I guess I was. Mr. Geis never came to my house after the raid. The sheriff brought him over in the yard. He said I did not have any business to say nothing. I should have taken everything on my back and they would have paid me for it. I am positive that Al Geis would spend from four to five days each week at my house during the months of January, February and March. I am equally positive that Walter Dennison was there four or five days each week during January, February and March except during the nine-day period for the mash to work."

A son of Mrs. Roof, testified as follows: "I am twelve years old. I live at St. Leon with my mother on a farm. I attend school and am in the fifth grade. Have known Mr. Dennison since January. I first saw Mr. Dennison at our house with Geis. Have known

Mr. Geis a couple of years. They wanted to rent our place to operate a still. They came several times after that, bringing barrels and sugar and a still which they put in the cellar. I saw Dennison and Geis and Luther cooking mash in the cellar. They heated the still with gasoline burners. They pumped water from the well through a hose. They all three hauled the whisky away in machines. They were to pay my mother one hundred dollars a run. I saw all three of them pay her. I never told anyone at school what was going on at home. My mother told me not to tell anybody. If people asked me about it she told me to say there was no still there. My mother told me what to testify to here, and what I have told is the truth. It was what my mother told me to tell, and Geis, Dennison and Luther told her to tell me."

Other witnesses for the state testified to facts tending to corroborate Mrs. Roof's testimony in many particulars. A federal prohibition enforcement officer, testified as follows: "I have been a federal prohibition enforcement officer for three and a half years. On April 8, 1925, I participated in a raid upon the farm of Emma Roof; Sheriff J. Chris Lommel, federal agents Oscar Holman and Roy Hollopeter were with me. We arrived at the home of Mrs. Roof about 10 o'clock and found Mrs. Roof and her small son at home. I accompanied Mr. Hollopeter to the cellar where we found a complete outfit for the distilling of intoxicating liquor. The still had been very recently operated. We found approximately ten gallons of moonshine liquor in a wooden keg. It was found in the basement of Emma Roof's house. There was about seventy-three gallons there besides this. The raid was not completed until evening. In the morning, Mr. Holman and I searched the farm of Walter Dennison in Franklin county. Mr. Dennison was at home. In his garage, we found eleven

five-gallon jugs, one full of wine, six of them were in burlap sacks, and all smelled of moonshine liquor. We found no liquor. When we arrived, Mr. Dennison was coming in from the field with a team. I asked Mr. Dennison about the liquor planted on the other side of the road. He said it was his property, but he knew nothing about the liquor. I said, 'We're going over and dig it up.' He said, 'All right, dig it up,' and went with us. In a ravine about seventy rods east of his house, were found a glass jug about half full of colored moonshine and a thirty-gallon barrel with just a little moonshine in it. At another place, we found one ten-gallon keg full of moonshine liquor and another ten-gallon keg and one empty ten-gallon keg. Mr. Dennison denied any connection with the still."

The evidence for the state was denied by witnesses testifying on behalf of the appellants. But, in determining whether the evidence is sufficient to sustain the finding or verdict, we can consider only the evidence most favorable to the prevailing party, which in this case is the state, with the inferences and conclusions to be drawn therefrom. *Howard* v. *State* (1921), 191 Ind. 232, 131 N. E. 403.

It is claimed by appellant Dennison that the verdict is contrary to law because the jury found his age to be twenty-eight years, and the only evidence in the record as to the age of said defendant Dennison was his own testimony that he was thirty-four years of age. There is no merit in appellant's contention. The age of the defendant in a prosecution for felony is not one of the facts charged in the indictment or information. It had nothing to do with the question of the guilt or innocence of the defendant. It is important only with reference to the place in which the defendant shall be confined during the term of his imprisonment. On this point, the verdict or finding of

the jury is advisory only, and any error made by the jury may be corrected by the board of managers, with the consent of the Governor, and the prisoner transferred to the proper institution. *Colip* v. *State* (1899), 153 Ind. 584, 55 N. E. 739, 74 Am. St. 322; *Bloom* v. *State* (1900), 155 Ind. 292, 58 N. E. 81; *Boone* v. *State* (1903), 160 Ind. 678, 67 N. E. 518; see, also, §§2316, 2317 Burns 1926; *Beuchert* v. *State* (1905), 165 Ind. 523, 76 N. E. 111, 6 Ann. Cas. 914.

We conclude that the verdict is sustained by sufficient evidence, and is not contrary to law. Judgment affirmed.