## HOOVER v. THE STATE.

[No. 20,174. Filed October 29, 1903.]

APPEAL AND ERROR.—*Waiver of Error.*—Alleged error in refusing to give instructions requested is waived by failure of counsel to discuss same. *p. 350.*

CRIMINAL LAW.—*Murder.*—*Evidence.*—Evidence in a prosecution for murder that witness had drunk with defendant and had seen him drink beer and whisky was properly admitted to meet and rebut specific evidence introduced in behalf of defendant that his flushed face, inflamed eyes, and unnatural manner at sundry times were the result of derangement, and that he never drank intoxicating liquors. *pp. 350–352.*

SAME.—*Evidence.*—In a prosecution for murder, a question asked defendant's wife, a witness for the State, on cross-examination, whether she and her husband, while living at a certain place, did not have some trouble, was properly excluded as not relating to anything said by the witness on her examination in chief, and as irrelevant. *p. 352.*

SAME.—*Evidence.*—*Cross-Examination.*—No error was committed in sustaining an objection to a question on cross-examination where the matter inquired about had been fully covered by the former cross-examination. *pp. 352, 353.*

SAME.—*Mental Incapacity.*—*Instruction.*—An instruction that "although there may be some mental derangement, still if the jury trying said person should find that such person at such time had mental capacity sufficient adequately to comprehend the nature

Hoover v. State.

and consequences of his acts, and a mind sufficient to deliberate and premeditate and to form an intention and purpose to kill— an unimpared will power sufficient to control an impulse to commit crime—he is not entitled to an acquittal upon the ground of mental incapacity'' is not objectionable as assuming that defendant had sufficient mental capacity or reflecting on the defense set up. *pp. 353, 354.*

CRIMINAL LAW.—*Mental Incapacity.—Instruction.*—No error was committed by the court in an instruction in a prosecution for murder in assuming that defendant committed the murder, where such fact was not controverted by defendant but was proved by the uncontradicted testimony of eyewitnesses, and the only ground of defense introduced was the alleged insanity of defendant. *p. 354.*

SAME.—*Instruction.*—An instruction in a prosecution for murder impressing upon the jury the gravity of the duty to be performed by them, the importance of their decision to the defendant and the public, and the necessity for the exercise upon their part of intelligence, independence, and moral courage was not an invasion of the province of the jury. *p. 355.*

From Marion Criminal Court; *Fremont Alford,* Judge.

Edward Hoover was convicted of murder in the first degree, and he appeals. *Affirmed.*

*Frank Hendricks,* for appellant.

*C. W. Miller,* Attorney-General, *C. C. Hadley, W. C. Geake* and *L. G. Rothschild,* for State.

DOWLING, J.—Indictment for murder in the first degree. Plea of not guilty, and special answer that the appellant was of unsound mind when the offense was committed. Trial by jury, and verdict of guilty, with the death penalty. Motion for new trial overruled, and judgment on verdict.

It is not denied that the verdict was right upon the evidence. The supposed errors, for which a reversal of the judgment is demanded, arise upon an adverse ruling upon an objection by appellant's counsel to a single question asked by the prosecuting attorney, the exclusion of the answers of a witness for the State to three questions on cross-examination by appellant, and misdirection of the jury by instructions numbered thirteen, eighteen, and twenty-two.

. The alleged error of the court in refusing to give certain instructions requested by appellant is waived by the failure of counsel for appellant to discuss it.

1. A witness for the State, Asa Hutchins, in the course of his examination was asked the following questions, among others: "I will ask you if you ever drank with him [appellant]? A. I have drank with him. What did you see him drink?" Counsel for appellant objected to the latter question. The objection was overruled, and exception noted, and the witness answered: "I have seen him drink beer and whisky."

It is contended on behalf of appellant that proof of particular acts of this kind was not competent for the purpose of rebutting the evidence of appellant's general reputation for sobriety, or to show that he was under the influence of liquor, and not insane, when the offense was committed. Even if these propositions contain a correct statement of the law, it does not follow that the trial court erred in admitting the testimony objected to. It was not introduced to contradict the proof of the general reputation of the appellant for sobriety, nor to rebut the evidence which tended to show that the appellant was insane, and not under the influence of liquor when the offense was committed. On the contrary, it was admitted to meet and rebut specific evidence introduced on behalf of the appellant to prove that his flushed face, inflamed eyes, and unnatural manner at sundry times were the result of mental derangement, and that he never drank intoxicating liquors. A brother-in-law of the appellant—William Raines—called for the defense, testified that about four years before the homicide the appellant came to his store armed with a large club, and accused him (Raines) of telling lies about him. The witness ordered him to go away, and behave himself, and added that when he (appellant) cooled down, he (Raines) would talk with him. The witness further stated that the appellant returned the next morning in a good humor, and

Hoover *v.* State.

friendly, and that he seemed to be all right. Raines also swore that he never saw the appellant under the influence of liquor, and in response to the question by counsel for appellant whether the appellant was a man that used liquor he answered that he never knew him to drink. Another witness for appellant—G. B. Lanham—testified that a day or two before the homicide the appellant came to his livery stable, leaned against the wall, looked flushed and unnatural, and appeared to be drunk. George Rader, also a witness for appellant, said he saw him a day or two before Sutton was shot; that his face was flushed, and his manner peculiar. Winnie Raines, a sister of the appellant, testified for him that he was not in the habit of getting drunk, and that she never saw him drink. The wife of the appellant was asked by appellant's counsel on cross-examination if at times the appellant did not refuse to eat his meals, and when the witness answered that he did, she was asked if he was under the influence of liquor. She said that he was at one time. Counsel for appellant then inquired of the witness if appellant was drunk at other times, and the witness answered that she did not know that he was. As counsel for appellant went into the subject of the habits of the appellant in respect to the use of liquor, and attempted to prove by several witnesses that the appellant never drank liquor at all, it was competent and proper for the State to show by way of rebuttal that the appellant did use liquor, and that other witnesses had seen him drink it. If it was shown by the proof that the appellant at times was quarrelsome and abusive, that his face was flushed, and his manner peculiar or unnatural, and that he looked and acted like a man who had been drinking, yet that he never drank intoxicating liquor, such evidence might tend to prove that he was of unsound mind. But if it was proved, upon the other hand, that the appellant did drink beer and whisky occasionally, the peculiarities of appearance and conduct described by appellant's witnesses might

be accounted for as the results of intoxication. The evidence of Hutchins that he had seen the appellant drink beer and whisky was properly admitted. It was strictly rebutting, and was entirely relevant to the issue tendered by the appellant. A party who introduces evidence of a particular kind can not complain if his adversary introduces evidence of the same kind to explain or contradict it. And this is true even where the rebutting evidence would otherwise be incompetent. *Perkins* v. *Hayward,* 124 Ind. 445, 449; *Pence* v. *Waugh,* 135 Ind. 143, 150; *Ewing* v. *Bass,* 149 Ind. 1, 10; *Campbell* v. *Conner,* 15 Ind. App. 23.

2. Upon the cross-examination of the wife of the appellant, a witness for the State, she testified that at one time she and her husband lived in a house at Noblesville, with a man named Stanbrough. Counsel for appellant thereupon asked the following question: "You had some trouble while you lived there?" An objection to this question by the prosecuting attorney was sustained by the court. One of the grounds upon which the evidence was excluded was that the inquiry did not relate to anything said by the witness on her examination in chief. The question was probably objectionable for this reason. *Louisville, etc., R. Co.* v. *Terrell,* 12 Ind. App. 328. It was also too indefinite. If the appellant was the person with whom it was supposed she had trouble, he should have been designated. In form, at least, the question had no relevancy to the issues which were being tried.

3. On the further cross-examination of the witness Gertrude Hoover the following questions were asked by counsel for appellant: "While you lived in the city, I will ask you whether you and he [appellant] visited at your folks? A. Yes, sir. During that time you may state whether or not he did not get mad at something at the house, and left before you did." The State's objection to the latter question was sustained, and the appellant excepted. The question was not a proper cross-examination of the witness,

Its relevancy to any matter testified to by her was not apparent, and no offer to show its connection with the facts stated on the direct examination of the witness was made. Neither was any further question asked by counsel for appellant which would indicate such relevancy. The court did not err in sustaining the objection to it.

The same witness was also asked upon cross-examination the following question: "I will ask you whether you noticed you husband's condition on Saturday, when he was at the Shover farm, when Mr. Shover brought him in the buggy?" The objection of the prosecuting attorney to this question was sustained on the ground that the witness had already been examined on the matter referred to. The record discloses that when this witness was upon the stand the first time, as a witness for the State, she was fully cross-examined by counsel for appellant in regard to the condition of her husband when he was at the Shover farm on the day mentioned in the above question. She was minutely interrogated concerning everything he said and did, and the character of the examination fully justified the court in sustaining the objection to the question.

4. The latter part of instruction thirteen given by the court is complained of on the ground that it reflected on the defense set up by the appellant; that it assumed that the appellant had sufficient mental capacity to commit the crime with which he was charged; and that it suggested to the jury grounds of justification for a verdict of guilty. That part of the instruction referred to is in these words: "But, although there may be some mental derangement, still if the jury trying said person should find that such person at such time had mental capacity sufficient adequately to comprehend the nature and consequences of his acts, and a mind sufficient to deliberate and premeditate and to form an intention and purpose to kill—an unimpaired will power sufficient to control an impulse to com-

mit crime—he is not entitled to an acquittal upon the ground of mental incapacity." There is here no reflection upon the defense of insanity interposed by appellant; no assumption that the appellant had mental capacity to commit the crime for which he was being tried; no improper suggestion of any kind to the jury. The legal proposition stated in the instruction is sanctioned by *Goodwin* v. *State,* 96 Ind. 550, and many other decisions of this court in cases where the defense of insanity was involved.

5. Objection is made to that part of instruction eighteen which reads thus: "You, and you alone, are to determine for yourselves from the whole evidence whether Edward Hoover was of sound mind at the time he killed Frank Sutton." It is said that the court erred in assuming that the appellant killed Sutton. There is nothing in the point. On the trial this fact was not contraverted. It was fully proved by the testimony of eyewitnesses and by the express admissions of the appellant, and these statements were not contradicted by any witness, or by any evidence, direct or circumstantial, given or offered. The only ground of defense presented to the court and jury was the alleged insanity of the appellant. *Braxton* v. *State,* 157 Ind. 213, 214, is directly in point, and it is there held that "The first objection urged to instruction sixteen given by the court is that it assumes that 'appellant assaulted the prosecuting witness, Applegate, and therefore invades the province of the jury.' The evidence given in the cause is clear and conclusive and without conflict that appellant first attacked and knocked the prosecuting witness down, that he was rendered unconscious by the blow, and that while he was lying on the ground in that condition appellant kicked him twice on the face and head. When facts are thus established without conflicting or opposing testimony, an instruction assuming the existence or truth thereof will not work a reversal of the cause, because the error, if any, is harmless. Thompson, Charging the Jury, 74; *Carver* v.

*Carver,* 97 Ind. 497, 518, 519, and cases cited; *Koerner* v. *State,* 98 Ind. 7, 13; *Smith* v. *State,* 28 Ind. 321, 327." See, also, *Whitney* v. *State,* 154 Ind. 573, 580.

6.   The twenty-second instruction was merely admonitory to the jury, impressing upon them the gravity of the duty to be performed, the importance of their decision to the appellant and to the public, and the necessity for the exercise upon their part of intelligence, independence, and moral courage.   A careful reading has satisfied us that it in nowise invaded the province of the jury.   It assumed the existence of no fact.   It was far from stating that the acquittal of the appellant would be a non-enforcement of the law.   It did not convey the faintest intimation that the jury should return a verdict of guilty, or that they should assess the penalty of death.

7.   As stated elsewhere in this opinion, it is not contended that the verdict is contrary to the evidence, or that any errors intervene except those which we have examined. The fact that the verdict of the jury and the judgment of the trial court impose the extreme penalty of the law has caused us to search the record with the strictest care to assure ourselves that no legal right of the appellant has been violated, and to secure for him the benefit of every provision of the law to which one in his situation is entitled.   A brief narrative  of the facts proved may not be out of place in this opinion.   At the time of the homicide, May 12, 1903, the appellant was a resident of the city of Indianapolis, and was twenty-eight years old.   He had no regular occupation, but was sometimes employed as a farm hand, and at others as a day laborer.   In 1899 he married the daughter of Frank Sutton.   They lived unhappily, and appellant frequently quarreled with her and abused her. Frank Sutton was employed by A. F. Shover as foreman and superintendent of a garden farm owned by Shover near Indianapolis.   In March, 1903, at the request of Sutton, Shover employed the appellant as a work hand, but dis-

charged him at the end of two weeks.  Appellant suspected ,
that his father-in-law, Sutton, procured his dismissal.  Ap-
pellant then removed to Indianapolis, and in the month of
April, during a quarrel with his wife, he threw a butcher
knife and a tin can at her, inflicting a wound on her wrist.
In consequence of this quarrel and assault his wife left
him and returned to her father's house.  Hoover charged
Sutton with separating him and his wife, and in conversa-
tion with the latter frequently cursed her father and threat-
ened him with violence.  He made several ineffectual efforts
to induce his wife to return and live with him, to
which attempts Sutton made no objection.  Two or three
days before the murder appellant went to Noblesville and
Sheridan, and on Monday, May 11, 1903, he returned to
Indianapolis.  Shortly after he arrived there he bought a
revolver and a box of cartridges at a pawn-shop.  He then
telephoned a message to his father-in-law, Sutton, to come
to his (Hoover's) residence in Indianapolis to get certain
articles belonging to his wife, saying that if Sutton did not
come he would sell them.  In pursuance of this request
Sutton went to Indianapolis, and proceeded to carry out
the goods belonging to his daughter.  While he was so en-
gaged, appellant came to the house and assisted him in
removing some bedclothes and other things.  Sutton started
to descend the stairway with a lot of books in his hands,
when the appellant shot him four times with the revolver
he had purchased, one bullet entering the wrist, one the
arm near the right elbow, and two the right side below
the nipple ranging downward and penetrating the liver and
one kidney.  After being shot, Sutton walked as far as the
bottom of the stairway, when he exclaimed "He killed me,"
immediately afterwards became unconscious, and expired
in about five minutes.  The appellant fled, but was captured
before he got out of the city.  When arrested, a revolver,
a box of cartridges, and a razor were found upon his per-
son.  He admitted that he had shot his father-in-law, and

made several conflicting statements regarding his reason for doing so.

The evidence in support of the plea of insanity was inconclusive and unsatisfactory. It was shown that when a child of seven or eight years he had three or four spasms. Two cousins were insane persons, and had been in the asylum. Appellant was morose, ill-natured, quarrelsome, and jealous. His temper was irritable and violent, and, when angry, he was malicious. At one time, upon very slight provocation, he had whipped his father. At another, he had threatened to beat his sister's husband with a large club. A few weeks previous to the shooting of his father-in-law he had violently assaulted and wounded his wife. At times, within a few days before the homicide, his face was flushed, his eyes were red, and his manner excited or unusual. He drank liquor occasionally, but was seldom intoxicated. For some days before he killed Sutton he seemed to be brooding over his troubles, and talked of suicide. Very few of the witnesses called by the appellant were willing to say that he was of unsound mind. Many for the State testified that, in their opinion, he was sane. All the evidence of peculiarities of appearance, disposition, and conduct of the appellant was easily reconcilable with soundness of mind and an unimpaired will. Every legal element of murder in the first degree—malice, premeditation, preparation, and deliberation in carrying a deadly purpose into execution—was clearly established by the proof.

Upon the whole record we can not but conclude that no error was committed by the trial court, and that the verdict and judgment are fully and firmly sustained by the proof.

Judgment affirmed.