JONES *v.* STATE OF INDIANA

[No. 27,709. Filed October 5, 1942.]

*Orph M. Hall,* of Terre Haute, for appellant.

*George N. Beamer,* Attorney General, *James K. Northam,* First Assistant Attorney General, and *Obed T. Kilgore,* Deputy Attorney General, for the State.

RICHMAN, J.—Appellant was tried by a jury, convicted of murder in the second degree and sentenced for life under the first count of an indictment which first charged that he purposely and with premeditated malice killed Edith Idelle Barton and then described in detail how the offense was committed. After reciting the chain of events leading up to his ravishing the deceased, Edith Idelle Barton, the indictment concludes as follows:

". . . that by reason of said ravishing and carnal knowledge, as aforesaid, the said child, Edith Idelle Barton, was then and there in great distress of mind and body and distracted with pain and grief; and the said child, Edith Idelle Barton, did then and there, while in the throes of such bodily pain and mental grief and distraction, and as a direct, immediate and proximate result of such ravishing and distraction with pain and grief and the throes of such bodily pain and mental grief and distraction, fall into said stream and body of water known as Sugar Creek; that said defendant, Cozzie Merrill Jones, did then and there, with full knowledge that she the said child, Edith Idelle Barton, had so fallen into said stream and body of water, as aforesaid, unlawfully, feloniously, intentionally, wilfully and wholly fail and refuse to rescue her, the said child, Edith Idelle Barton, from the said stream and body of water and thus preserve the life of the said child, Edith Idelle Barton; although he the said defendant, Cozzie Merrill Jones was then and there fully able to *affect* such rescue and preserve the life of said child, Edith Idelle Barton . . ."

Error is assigned on the overruling of a motion to quash this indictment, first, for uncertainty and, second, for insufficiency of facts to state a public offense. Ap-

pellant contends that the gravamen of the offense charged is the failure to rescue decedent from drowning, and that the indictment is defective because it does not allege that he was under a duty or had the present apparent ability to effect the rescue. The duty arises from the facts, not from any conclusion that might have been but was not pleaded. The ability is well pleaded. While the word "affect" is incorrectly used, its meaning is made clear by the latter part of the sentence: "and preserve the life of said child . . ." See *Pierce* v. *State* (1881), 75 Ind. 199.

Civil liability has in numerous cases been predicated upon a duty to rescue one who has been endangered by the defendant's negligence. See cases in Note, 69 L. R. A. 513, 533. In the recent case of *L. S. Ayres & Co.* v. *Hicks* (1942), *ante*, p. 86, 40 N. E. (2d) 334, 337, this court recognized a duty to one in peril on the defendant's premises as an invitee even though the peril was created without negligence on the part of the defendant. Can it be doubted that one who by his own overpowering criminal act has put another in danger of drowning has the duty to preserve her life?

The question, however, is not so much one of duty and breach thereof as one of cause and effect. Were the criminal acts of appellant the proximate cause of her death? The indictment charges that the appellant took possession of the body of Edith Idelle Barton, a child twelve years of age; that he committed an assault and battery upon her; that he committed a rape upon her; that by reason of these criminal acts Edith Idelle Barton was caused to suffer great distress of mind and body, and she was thereby rendered irresponsible; that while in such condition, she fell into a body of water and drowned. The recital in the indictment of appellant's failure to rescue her is not the allegation of a separate

public offense but the statement of one link in a chain of causation, beginning with appellant's wrongful acts, and leading directly to the death of Edith Idelle Barton. Hale's, "Pleas of the Crown," p. 432; I Warren, *Homicide* (2d. ed.) § 59; *State* v. *Beckman* (1941), 219 Ind. 176, 37 N. E. (2d) 531; *State* v. *Rees* (1910), 40 Mont. 571, 107 P. 893; *Stephenson* v. *State* (1933), 205 Ind. 141, 179 N. E. 633. The indictment is certain to a common intent and states a public offense under § 10-3401; Burns' 1933, § 2402, Baldwin's 1934.

Appellant assigns error in the overruling of his motion for new trial under which assignment he insists that the evidence is insufficient to sustain the verdict. The only point made on this specification is that there was no evidence to show that Edith Idelle Barton was alive and could be rescued by appellant at the time when his failure so to do became the basis for the charge of murder. The record discloses that on the morning after the crime was alleged to have been committed, appellant was subjected to a long examination in the office of the prosecuting attorney which was transcribed and admitted in evidence without objection. It discloses that decedent got out of the car in which the act of rape occurred and that appellant immediately followed. She either fell or jumped off a bridge, and he followed her to the bridge and looked down into the water. The examination continued as follows:

"Q. Where was she then?
A. I thought I could see her down in the water —well, I knew she was down there. And I run on down around there and walked on out there and I waded and I got on one sandbar and I tried to reach her. She was moving slow down the stream. And then I come back up.
Q. How does it come you did not go and pick her up and take her out of there?

A. I was afraid to. I did not know what to do with her. I knew I would be blamed for it.

Q. You went down and waded into the water?

A. Yes, I was wet to my knees.

Q. How does it come you did not go and take her out of that water?

A. I don't know.

Q. Did you have hold of her there at any time there in the water?

A. No.

Q. She was laying there in the water—you could get to her, couldn't you?

A. Oh—let me go to sleep.

Q. Answer that question.

A. I could by wading out there."

There was circumstantial evidence tending to corroborate this story. If the ability to rescue her alive were a material issue, we think this evidence sufficient as a basis from which the jury might reasonably have drawn the necessary inference.

Appellant complains of the giving of an admonitory instruction which is almost identical with the instruction number seventeen given in the case of *Hess* v. *State* (1922), 192 Ind. 50, 54, 133 N. E. 880, 881. A sentence is added to the instant instruction which removes the objection stated on page fifty-four of the opinion in the Hess case. We do not think this instruction was prejudicial to appellant. See also *Hoover* v. *State* (1903), 161 Ind. 348, 68 N. E. 591.

In his closing argument the prosecuting attorney asked the death penalty, arguing to the jury that persons sent up for life or five to twenty-one years usually obtain release on parole long before their terms are completed. Appellant objected and the court instructed the jury to disregard the argument. The fact that the verdict did not inflict the death

penalty indicates that the jury heeded the court's admonition. Prejudicial error is not shown.

Appellant objected to introduction of evidence in the nature of an admission or confession before the *corpus delicti* was established. In every case of homicide there must be proof, direct or circumstantial, of the *corpus delicti* and the commission of the crime through the agency of the defendant. The order of introduction of evidence in proving these two factors is not mandatory but is largely a matter for the discretion of the trial court. *Miller* v. *State* (1937), 211 Ind. 317, 6 N. E. (2d) 948.

Finding no prejudicial error the judgment is affirmed.

NOTE.—Reported in 43 N. E. (2d) 1017.