## WATTS v. STATE OF INDIANA.

[No. 28,695. Filed December 8, 1950. Rehearing denied December 29, 1950.]

*Frank Hamilton,* of Greensburg; *William H. Dobbins* and *Lew G. Sharpnack,* both of Columbus, for appellant.

*J. Emmett McManamon,* Attorney General; *Frank E. Coughlin, George W. Hand* and *Norman J. Beatty,* Deputy Attorneys General; *George S. Dailey,* Prosecuting Attorney, and *Samuel E. Garrison,* Deputy Prosecuting Attorney, 19th Judicial Circuit, for appellee.

JASPER, J.—Appellant was tried upon an indictment returned by the grand jury of Shelby County in two counts. The first charged murder in the first degree of one Mary Lois Burney by shooting, and the second charged the same murder while attempting to rape Mary Lois Burney. A plea of not guilty was entered. Trial was had before a jury, a verdict of guilty was returned upon each count of the indictment, and judgment and sentence that appellant be electrocuted followed.

Because of the questions raised, it is necessary to set out the history of this case.

Appellant was originally indicted in Marion County, charged with first-degree murder in two counts. A change of venue was taken and the cause was sent to Shelby County, where it was tried and a verdict of guilty returned and sentence of death imposed. The case was then appealed to this court and affirmed. *Watts* v. *State* (1949), 226 Ind. 655, 82 N. E. 2d 846. The judgment of this court was reviewed by the Supreme Court of the United States, and was reversed. *Watts* v. *State* (1949), 338 U. S. 49, 69 S. Ct. 1347, 93 L. Ed. 1801. Pursuant to mandate, this court reversed the judgment of the Shelby Circuit Court, with instructions to sustain the motion for a new trial, and for further action agreeable with the opinion of the Supreme Court of the United States.

On October 6, 1949, appellant filed a plea in abatement, which was sustained. On October 21, 1949, appellant, appearing in person before the court, was called upon to elect whether to be further prosecuted in Shelby County or in Marion County, and elected to have the case instituted in Shelby County. On October 25, 1949, the Shelby County Grand Jury returned the indictment in open court. On October 26, 1949, a bench warrant was issued and delivered to the Sheriff of Shelby County, and was served upon appellant. A motion to quash each count of the indictment was later filed and overruled. On December 20, 1949, appellant filed a written motion for an order to transfer said cause and all papers to Marion County, which motion was overruled. On the 23rd day of December, 1949, appellant filed his verified application for a change of venue from Shelby County, which was granted, and the cause was venued to Bartholomew County, where this case was tried.

Appellant assigns three grounds as error:

(1) That the court erred in overruling appellant's motion for order to transfer this cause and all papers to Marion County, Indiana.

(2) That the court erred in overruling appellant's motion to quash the indictment and each count thereof separately and severally.

(3) That the court erred in overruling appellant's motion for a new trial in said cause.

Appellant's first and second assignments of error can be discussed together, since they involve the same question.

Under these two assignments of error, appellant contends that appellee failed to prove the venue, as required by § 9-1308, Burns' 1942 Replacement. We therefore set out the three sections of the statute which are pertinent.

Section 9-1308, Burns' 1942 Replacement:

"If it shall be necessary to institute a new prosecution for the same offense after such change of venue has been taken, the defendant in such case shall elect, when so required by the court, whether such further prosecution shall be instituted in the court to which or in that from which such change was taken; and thereupon, he may be recognized to appear in the court which he elects, or be committed for want of bail, detained in custody or remanded to the county from which the change was taken, as the case may require."

Section 9-1310, Burns' 1942 Replacement:

"If, on such new prosecution, such defendant be prosecuted for such offense in the court to which such change of venue was taken, such new indictment may be found or affidavit filed and prosecuted to final execution therein as if such offense had been committed in the county of such court; but the indictment or affidavit in such case

shall state how the proceeding came into the court where the party elects to be tried, and that he has elected to be tried in such county."

Section 9-1311, Burns' 1942 Replacement:

"If such defendant refuses to elect in which county such new prosecution may be instituted, he shall be recognized to appear before or be remanded to the proper court of the county from which the change of venue was taken, in like manner as if he had elected to be proceeded against in such county."

The contention of appellant that the State failed to prove that Robert Austin Watts took a change of venue from Marion County is not well taken. Crimes in Indiana are statutory (see § 9-2401, Burns' 1942 Replacement), as is our criminal procedure. The State's Exhibits numbered 5 to 7, inclusive, being the indictment and order book entries from the records in Marion County, were admitted and read in evidence. They showed the original indictment and the steps taken thereafter, through and including the filing of the change of venue, the granting of the change, and the transfer of the cause to Shelby County. The caption of the cause and the number assigned thereto were set out in the exhibits. In this state, a change of venue from the county can only be taken by the defendant. See § 9-1301, Burns' 1942 Replacement. The proof therefore that the change of venue from Marion County to Shelby County was taken under our statutes is in and of itself sufficient to show that appellant took the change of venue. No more direct evidence is required for the proof of venue than is required for the proof of any of the other matters required for conviction, and may be established by inference. *Davis* v. *State* (1925), 196 Ind. 213, 147 N. E. 766. The setting out of

the name of "Robert Austin Watts" in the indictment as taking the change of venue and that it was granted to him was mere surplusage and need not be proved. *Ewbank's Ind. Crim. Law* (2d Ed.), § 345, p. 216; *Howard* v. *State* (1921), 191 Ind. 232, 131 N. E. 403.

The evidence further showed by State's Exhibits numbered 17 to 19, inclusive, these being the order book entries in Shelby County, the steps taken in Shelby County, including the abating of the action and the ordering of Robert Austin Watts to elect in which county the new action should be instituted, and that Robert Austin Watts personally elected to have the new action instituted in Shelby County. The State therefore did prove the necessary averments to show venue in Bartholomew County. It was not necessary to show that appellant was represented by attorneys. It was only necessary that appellant personally made the election.

The next contention, that the constitutional rights of appellant were violated under § 1 of the Fourteenth Amendment of the Constitution of the United States and under Article 1, § 13, of the Constitution of Indiana, is not well taken. Appellant contends that he was entitled to have the cause remanded to the county in which the crime was committed. However, by taking the change of venue from Marion County, he waived his constitutional right to be tried in the county in which the offense was committed. This right is personal, and may be waived, and was personally waived. 14 Am. Jur., Criminal Law, § 233, p. 930. And, as above stated, our criminal procedure is statutory, and the right to indictment under our grand jury system may be modified or abolished by the General Assembly, under Article 7, § 17, of the Constitution of Indiana. Sections 9-1308, 9-1310, and 9-1311, Burns' 1942 Replacement, gave to

appellant the right to elect in which county he wished to have the new action instituted, and, as provided by § 9-1311, if he refused to elect, the cause would be remanded to the county in which the offense was committed. These sections, in fact, reserved to appellant the right to be tried in the county to which the change of venue had been taken. *State ex rel. Schaaf* v. *Rose* (1943), 222 Ind. 96, 51 N. E. 2d 856. There was no violation of the constitutional rights of appellant under the above three sections of our statute. The fact that the indictment set out the name of Robert Austin Watts as having taken the change of venue from the county and having filed the plea in abatement is contended to have impaired his right to a fair and impartial trial. This is no evidence whatsoever of the guilt of the accused, and the jury was instructed by the court, in Instruction No. 9, that:

> "The indictment preferring the charge against the defendant in this case is merely an accusation or formal charge against him and is no evidence whatever of his guilt."

It did not impair his right to a fair and impartial trial.

Appellant further contends that in the case of *State ex rel. Meloy* v. *Barger* (1949), 227 Ind. 678, 687, 88 N. E. 2d 392, 396, a new law was created and a substantial right of appellant was taken away, and, further, that the decision was *ex post facto*. This was an original action before this court to decide a jurisdictional question between the regular judge and a special judge. This court, in the original action, mandated the regular Judge of the Shelby Circuit Court "to assume and exercise full jurisdiction and conduct all proceedings in Cause No. 4852, entitled 'State of Indiana v. Robert Austin Watts,' now pending

in the Shelby Circuit Court, until said cause is finally disposed of, or until such time as a valid change shall be taken and perfected from said judge or from said Shelby County in said cause according to law." The judgment of the court in this last-cited case did not create a new law and did not take any of the substantial rights of appellant away, and the decision was not *ex post facto* under Article 1, § 10, of the Constitution of the United States, and Article 1, § 24, of the Constitution of Indiana. The attorneys for appellant, in their brief, attempt to re-argue the last-cited case, which this court will not allow. However, in the last-cited case, this court interpreted the law as it existed. It interpreted the law as to the procedure to be followed and the jurisdiction to be exercised. No substantial right was taken away from appellant, as he was still entitled to a change of venue, or a change of judge, as shown by the above mandate to the Shelby Circuit Court. In fact, he was later granted a change of venue from the county. Where a law relates to a matter of procedure only, and no substantial right is taken away, it is not *ex post facto*. *Robinson* v. *State* (1882), 84 Ind. 452; *Commonwealth* v. *Gallo* (1931), 275 Mass. 320, 175 N. E. 718, 79 A. L. R. 1380. The mandate as issued by this court is the law of this state, and in no manner changed the law, but stated only what has been the law. *Stephenson et al.* v. *Boody* (1894), 139 Ind. 60, 66, 38 N. E. 331. There is no merit in this contention of appellant.

Appellant further contends that the judgment of the court was not sustained by sufficient evidence and was contrary to law. This court cannot weigh the evidence, but must determine whether there is substantial evidence of probative value from which the jury could reasonably have inferred that appellant was guilty on each count of the indictment.

Therefore we look to the evidence, direct and circumstantial, and the inferences to be drawn therefrom most favorable to the State. *Kallas* v. *State* (1949), 227 Ind. 103, 83 N. E. 2d 769, 771.

The evidence reveals that appellant was originally indicted in Marion County, and that a change of venue of the cause was taken to Shelby County, and that a transcript and all papers were sent to Shelby County. Further, that a plea in abatement was filed in Shelby County; that this plea in abatement was sustained; that the court ordered appellant to elect in which county he desired the new prosecution to be instituted, and that appellant elected to have it instituted in Shelby County.

Herschel A. Burney testified that on November 12, 1947, he and Mary Lois Burney were husband and wife, and lived at 8558 North Pennsylvania Street, in the City of Indianapolis; that he left home at approximately 8:30 a.m., on November 12, 1947, after having had breakfast with his wife, at which time Mrs. Burney was in good health; that he did not talk with her through the day, but tried to call her about 5:00 p.m. on the same day, and received no answer; that he arrived home that evening about 6:00 o'clock; that after stopping at the mailbox he drove into the garage, and knocked on the kitchen door, which was locked, but received no response; that there were no lights on in the house; that upon going to the front door, he found the storm door entirely open and the house door one-third open; that he went across the street to a neighbor's and had his neighbor return with him to his home; that upon entering the house with his neighbor, Mr. Burney turned on the table lamp in the living room; that he noticed the disarrangement of the furniture; that the smoking stand was upset; that his wife's house slippers were in front of a living

room chair; that the furniture in the dining room was disarranged; one leg of the dining room table was broken and bent back, the other leg slightly bent, and the rug in said room was disarranged; that upon turning on the lights and going into the west bedroom, he found Mary Lois Burney, his wife, lying dead on the bed; that on the floor, at the head of the bed, was a butcher knife, which was bent, and two discharged shotgun shells; that there was a hole in the west bedroom door, continuing into the wall, apparently caused by the discharge of a shotgun; that he and his neighbor then called the police and the family physician; that the deceased was still in the same gown and robe she wore in the morning, and that the house slippers in the living room were the same ones she was wearing when he left home that morning; that the gown of the deceased was torn from her shoulder and her clothes were in general disarray; that upon further investigation he found his wife's small purse, in which she kept loose change, and her charge-a-plate missing; that the butcher knife so found had been taken from the kitchen; further, that an old model Winchester Special 16-gauge shotgun, which was kept loaded and placed in the northwest corner of the bedroom, was missing; that upon entering into his driveway that evening he noticed oil stains on the concrete which had not been there when he left home that morning. The butcher knife and shotgun were each identified by this witness and exhibited to the jury. This gun was further identified as the same gun to which appellant directed the officers, as hereinafter set out.

A neighbor of the Burneys, who lived at 8515 North Pennsylvania Street, Indianapolis, testified that Mr. Burney came to his home about 6:00 p.m., on November 12, 1947, and he went with him to the Burney home, and found the storm door and the main house door

open; that no lights were burning and that it was necessary to turn the lights on; that when the lights were turned on, he noticed that "part of the living room and dining room were pretty much in shambles"; that a leg on the dining room table had been broken and chairs were knocked over; that in going into the northwest bedroom, the body of Mrs. Burney was found on the bed, and there were spots of blood and strands of hair and shotgun pellets imbedded in the northwest wall, and there were two shotgun shells and a knife on the floor; that the entire left side of Mrs. Burney's head had been shot away, and part of the face; that he and Mr. Burney looked for a shotgun and could not find it.

A physician testified that Mrs. Burney was killed with a shotgun, and that some of her face was missing.

The coroner testified that he arrived at the Burney home at about 7:15 p.m., on November 12, 1947, and that Mrs. Burney had been dead six or seven hours; that her death was caused by a shotgun wound in the left side of the face; that the left side of the face and the lower face or jaw were blown completely away.

The physician who performed the autopsy on Mary Lois Burney, being a pathologist, testified that he performed the autopsy at 9:30 p.m., on November 12, 1947, and that she had been dead between six and ten hours; that there were bruises on the body, measuring about one-half inch in diameter, one being on the right shoulder just above the collar bone, one on the left leg, and one on the thigh and right forearm; that there was a loosely round and gaping wound over the front of the left lower jaw, two inches in diameter; that the wound was caused from a shotgun held at close range, which produced bleeding and was quickly fatal; that the point of entrance of the wound was over the left side of the lower jaw, and the point of exit down

over the left side of the neck; that the path of the
missle or missiles was downward at about a 25-degree
angle.

Testimony further revealed that appellant was in
the employ of the City of Indianapolis on November
12, 1947, and was driving a dual-tired truck, painted
yellow, with a black hood, numbered 514; that he was
assigned to work at a project in University Heights
on November 12, 1947; that he came to work in the
morning in his work clothes; that later in the morning
he came back dressed up, wearing a yellow jacket,
which was State's Exhibit 41; that University Heights
is approximately sixteen miles south of the Burney
home.

A witness testified that she lived at 5920 North
Parker Avenue, in Indianapolis, and that appellant
came to her home near 9:00 o'clock a.m., on November
12, 1947, in a city truck, yellow in color, and inquired
for a person that the witness did not know; that at
that time her husband came out of the garage, and
appellant started his truck and drove away.

Another witness testified that she lived at 7999
Evanston Road, in Marion County; that appellant came
to her home on November 12, 1947, in a yellow or
orange and black truck, at 9:30 a.m., and said that he
had a load of asphalt for a Mr. Coleman; that the
witness had a big, black dog there at the time; that
upon being informed that there was no one by the
name of Coleman living in the neighborhood, appellant
asked for the telephone directory, and that upon being
handed it, he dropped it and did not use the telephone.

Testimony further revealed that at approximately
9:45 a.m., on November 12, 1947, appellant stopped at
7550 Westfield Road, in Indianapolis, which is in the
northeast part of the city, stating that he had a load
of cinders to deliver, and asked if people by the name of

Williams lived there; that upon being told they did not, he asked to use the telephone; that there was a large collie dog on the basement steps, within appellant's view; that the man who came in the truck and used the telephone was appellant.

Another witness testified that she lived in the immediate neighborhood of the Burneys, in Indianapolis; that appellant came to her door at ten o'clock on the morning of November 12, 1947, while she was at home alone, and said he had a load of asphalt to deliver at her home; that upon being informed he was mistaken, he asked to use the telephone; that the witness was using it at the time, and appellant waited until she was through; that he then went to the telephone, and upon being asked by the witness if he had made the call, said that this was the place to which he was to deliver the asphalt; that he asked the witness to write a note to his boss so that he would not get into trouble, and that, as she stooped over a table to write the note, appellant put his hand over her mouth and ordered her to go to the bedroom and undress; that he dragged her to the kitchen and picked up a butcher knife and, with it, forced her to go to the bedroom; that the telephone rang, and he let her answer it, warning her to watch her voice; that it was not her ring, but she tried to attract the attention of the woman on the telephone that she needed help; that she went back to the bedroom and appellant again ordered her to take off all her clothes, which she did; that appellant took off his jacket, which was identified as State's Exhibit 41, and that it had appellant's name in the back of it. This jacket was left in the home of the witness. Appellant was told that ladies were coming there at 10:00 a.m. for a meeting; that a door was unlocked, and she went to it, with appellant following her, with the knife at her back, and that instead of

locking it, she turned the handle and pushed open the outside door; that appellant grabbed her, but she struggled down the steps, and bit his fingers; that he let loose of her and she ran into the street, nude, and was picked up by a man in an automobile, who took her to the first house; that from this neighbor's house the police were called; that about 3:00 p.m., on November 12, 1947, this witness saw appellant in jail and identified him as the man who was in her home and who had attempted to rape her.

A witness testified that between 10:00 and 10:30 a.m., on November 12, 1947, she talked with Mary Lois Burney on the telephone for about half an hour.

Another witness testified that she lived at 8120 College Avenue, Indianapolis; that at about 1:00 p.m., on November 12, 1947, appellant came to her house in a city truck; that her five-year-old daughter was at home for lunch; that she went to the door with her daughter; that appellant said he was looking for people by the name of White, and, upon being informed that there was no one by that name in the neighborhood, he left and got in his truck, which was orange color, and drove away.

Another witness testified that she lived at 7260 Edgewater Place, Indianapolis; that about 1:00 p.m., on November 12, 1947, appellant drove a yellow-orange truck into their driveway; that he stated he had a load of stone to deliver to some people, and upon being told that they did not live there, he asked to use the telephone; that upon being informed there was no telephone in the house, he left.

Another witness testified that she lived at 8515 North Pennsylvania Street, Indianapolis, and was a school teacher by occupation, and was at home on November 12, 1947; that her husband called her a little after 1:00 p.m.; that she then went into the living room

to read, sitting close to a west window, where she could see the Burney home and driveway; that she sat at the window, reading, until approximately 2:25 p.m.; that while she was reading she heard an engine racing and saw a truck, the front of which was at the entrance of the Burney driveway, and the rear of which was in a direct line with her vision, and was backing around in the road, and went north on Pennsylvania Street; that it was a city department dual-tired truck, orange and black in color; that the noise of this truck attracted her attention some time between a little after 1:00 and 2:20 p.m.; "that the engine was racing terrifically."

The homes of all these witnesses were in the same section of the city.

The evidence further shows that appellant was arrested at 2:40 p.m., on November 12, 1947, at the city asphalt plant in Indianapolis, for attempted rape; that he drove in at that time in an orange-colored dump truck numbered 514; that after his arrest he was taken to the Marion County Jail.

Evidence further shows that a deputy sheriff, on November 12, 1947, at approximately 4:00 p.m., took appellant to the back of the jail and had him remove his clothes; that appellant had scratches on his knees, thighs, elbows, nose, and forehead, and teeth marks on the middle and index fingers at the first joint; that the teeth marks were on the top and bottom side of his fingers; that on November 18, 1947, at approximately 1:30 a.m., appellant directed witnesses to the 400 block of West Kansas Street, Indianapolis, to a vacant lot, where the shotgun belonging to the husband of Mary Lois Burney was found; that on test by the State Police it was found that the empty shells in the Burney home were fired from this gun; that on December 4, 1947, appellant called a deputy sheriff and voluntarily

told him where he had thrown the purse of Mary Lois Burney, with the charge-a-plate, and that upon investigation the charge-a-plate was found at the location where appellant said it would be.

Four witnesses further testified that appellant had voluntarily talked with them while they were fellow prisoners with him in the Marion County Jail, that he played cards with them, and told them that he drove into the Burney driveway and asked to use the telephone; that when the storm door was open he forced his way in and grabbed Mrs. Burney and that they tusseled; that when he went into the dining room he started to put his arms around her and she backed away from him and he chased her around the table; that she ran into the bedroom and came out with a shotgun and fired at him, but missed him; that he then grabbed the gun and shot her; that she was not the only white woman he had been with; that these conversations took place both before and after November 21, 1947.

Evidence was introduced by the State as to six specific acts of rape or attempted rape on the part of appellant committed on other women.

It is our opinion that there is substantial evidence to support the verdict on both counts of the indictment.

Appellant complains that the *corpus delicti* had not been proved as to the second count of the indictment at the time of the admissions made by appellant to his fellow prisoners and admitted into evidence. The order of introduction of this testimony is discretionary with the trial court. *Jones* v. *State* (1942), 220 Ind. 384, 43 N. E. 2d 1017. It is also argued that the *corpus delicti* as to the second count was not proved. The *corpus delicti* can be proved by either direct or circumstantial evidence. *Hunt* v.

*State* (1939), 216 Ind. 171, 178, 23 N. E. 2d 681; *Messel* v. *State* (1911), 176 Ind. 214, 95 N. E. 565. Certainly the evidence above set out was sufficient to establish the *corpus delicti* as to each count of the indictment. *Schuble* v. *State* (1948), 226 Ind. 299, 79 N. E. 2d 647; *Evans* v. *State* (1946), 224 Ind. 428, 68 N. E. 2d 546; *Parker* v. *State* (1949), 228 Ind. 1, 88 N. E. 2d 556; *Hurst* v. *State* (1944), 222 Ind. 599, 56 N. E. 2d 493; *Messel* v. *State, supra.* In Indiana, the independent evidence alone need not be sufficient to establish the *corpus delicti* beyond a reasonable doubt, but there must be some evidence of probative value aside from the admissions to prove that the crime charged was committed. When there is some independent evidence, as here, tending to prove that the crime charged has been committed by some one, the admissions may be considered with independent corroborating facts in determining whether the *corpus delicti* has been established beyond a reasonable doubt. *Parker* v. *State, supra.*

Appellant further contends that it was error to allow the introduction of the evidence by the State of six specific acts of rape or attempted rape by appellant covering the period from December 4, 1944, to May 25, 1947. This testimony was admitted over objection. The objection made in each of the six instances was as follows:

> "Defendant objects for the reason that the corpus delicti of the second count of the indictment had not been sufficiently proven so as to make similar offenses admissible. Secondly, that offense charged in the second count of the indictment has not been established so as to warrant admission of similar offenses. Third, that the corpus delicti in the second count of the indictment has not been established by sufficient independent evidence to warrant the admission of the defendant's

admissions to Russell Webb, Sherman Lloyd, James A. Toney, John Wall, Carol Ann Fligenschmeidt, Mary Butler, Mary Buses, Alice Hamilton, etc. Said admissions having heretofore been admitted over objection of the defendant, and which evidence was the basis of the proof of the corpus delicti in the second count of the indictment, and that the corpus delicti cannot be proven by the admissions of the defendant in the first instance, so as to make the evidence of similar offenses admissible, and *fourth*, that the evidence sought to be admitted amounts to separate and distinct offenses and is too remote in point of time from the date of the commission of the offense for which the defendant is charged and is an independent and distinct crime from that which is the subject of inquiry and is inadmissible as not falling within any of the exceptions to the general rule and is not a similar offense so as to be admissible under any of the exceptions for the admissibility of evidence of similar crimes and which if admitted would only tend to prejudice the minds of the jury against the defendant and his defense."

Because of what we have heretofore said, we need not discuss further the question as to the *corpus delicti* of the second count of the indictment and the admissions of appellant. This leaves for disposal, then, only the question raised by the fourth part of the above objection.

The general rule in Indiana for the admission of evidence of separate, independent, and distinct crimes, in establishing the guilt of a defendant, is that such evidence is inadmissible except to show intent, motive, purpose, identification, or a common scheme or plan. *Zimmerman* v. *State* (1921), 190 Ind. 537, 130 N. E. 235; *Gears* v. *State* (1932), 203 Ind. 380, 180 N. E. 585; *Hergenrother* v. *State* (1939), 215 Ind. 89, 18 N. E. 2d 784; *Kallas* v. *State, supra.*

Under the second count of the indictment, appellant was charged with murder while attempting rape. Each of the six women testified either that the appellant attempted rape or did rape them, and that in doing so he threatened death, used a weapon or threatened the use of a weapon, or inflicted bodily harm. The evidence of the six specific acts of rape or attempted rape, plus the evidence of the woman who escaped in the nude, revealed a definite plan, system, and scheme against a class of which the deceased was a member. *Kallas* v. *State, supra; Gears* v. *State, supra; Borolos* v. *State* (1924), 194 Ind. 469, 143 N. E. 360. This court said in *Smith* v. *State* (1939), 215 Ind. 629, 634, 635, 21 N. E. 2d 709, 711, 712:

"Appellants also object to the introduction of certain evidence relating the commission of other and separate crimes from the one charged in the indictment. This evidence was that window fronts of other barber shops had been broken by appellants. This type of evidence has been questioned many times in the courts. It has been uniformly held that when the act constituting the crime has been established, then any evidence tending to show motive, intent, or guilty knowledge, if in issue, or any evidence which directly or, as a natural sequence, tends to show the defendant guilty of the crimes charged, is competent although it tends to show him guilty of another and distinct offense. It is the probative value of such evidence to prove the crime charged that makes the evidence admissible and not the fact that it proves or tends to prove the defendant guilty of other crimes. *Underhill* v. *State* (1916), 185 Ind. 587, 114 N. E. 88; *Gears* v. *State* (1932), 203 Ind. 380, 180 N. E. 585; *Zimmerman* v. *State* (1921), 190 Ind. 537, 130 N. E. 235.

"Where the circumstances surrounding the offenses other than that charged are of a similar nature, showing use of similar or peculiar instrumentalities in the commission of each offense, or

employment of a uniform scheme or method, evidence of such offenses is both relevant and material and is admissible as having probative force to prove the defendant guilty of the particular crime charged. *Peats* v. *State* (1938), 213 Ind. 560, 12 N. E. (2d) 270; *Gears* v. *State, supra; Dotterer* v. *State* (1909), 172 Ind. 357, 88 N. E. 689."

The evidence further tended to prove intent, malice, and identity. The fact that the crimes under the circumstances covered a period from six months to three years prior to the crime with which appellant is charged does not render the evidence inadmissible. Remoteness of time would only go to the weight of the evidence, and not to the admissibility of it. *Booher* v. *State* (1926), 198 Ind. 315, 321, 153 N. E. 497. As said in *Anderson* v. *State* (1933), 205 Ind. 607, 618, 186 N. E. 316, 320:

"All evidence is relevant which throws, or tends to throw, any light upon the guilt or the innocence of the defendant. And relevant evidence which is introduced to prove any material fact ought not to be rejected merely because it proves, or tends to prove, that at some other time or at the same time the accused has been guilty of some other separate, independent, and dissimilar crime. The general rule is well settled that all evidence must be relevant. If evidence is relevant upon the general issue of guilt or innocence, no valid reason exists for its rejection merely because it may prove, or may tend to prove, that the accused committed some other crime, or may establish some collateral and unrelated fact. Underhill on Criminal Evidence (2 Ed., p. 163) and many cases cited."

The trial court admitted the evidence of these six acts of rape or attempted rape, and instructed the jury as to the consideration to be given the evidence and the limitation to be placed on the evidence.[1]

---

[1] See *Williamson* v. *United States* (1908), 207 U. S. 425, 28 S. Ct. 163, 52 L. Ed. 278.

The court instructed the jury, in its Instruction No. 21, as follows:

"The evidence tending to show the commission of other acts by defendant, similar to those charged in the second count of the indictment should not be considered unless the jury first finds as a fact beyond a reasonable doubt from other evidence that the defendant did kill Mary Lois Burney while, he, the said Robert Austin Watts, was engaged in an attempt to perpetrate the crime of rape upon her, as charged in the second count of the indictment. The jury being convinced of these facts then and then only are you permitted to consider the evidence with reference to other similar acts for the purpose of determining intent, motive, purpose or identification of the person who committed the crime charged in the second count of the indictment."

In Instruction No. 22 the court limited the purpose for which the jury might consider the evidence of the other offenses, which instruction was as follows:

"Evidence of other criminal offenses alleged to have been committed by the defendant have been introduced. The defendant is not on trial for anything that was done to any of these witnesses. You may consider this evidence for what you may think it is worth, if anything, for considering the intent or motive of the defendant in entering the Burney home, or for doing any acts that he did in said home, if you find from the evidence that the defendant did enter the Burney home and did do acts therein. You may also consider this evidence for what it is worth, if anything, in identifying the defendant in this action."

The case of *Lisenba* v. *California* (1941), 314 U. S. 219, 227, 228, 62 S. Ct. 280, 286, 86 L. Ed. 166, 175, revealed that Lisenba was convicted of murdering his wife. Testimony was admitted, over objection, concerning the death of Lisenba's former wife two and

one-half years previously, on the principle that similar but disconnected acts may be shown to establish intent, design, and system. The Supreme Court of the United States said, among other things, in upholding the conviction:

"The Fourteenth Amendment leaves California free to adopt a rule of relevance which the court below holds was applied here in accordance with the State's law."

Under the circumstances, the evidence of these six acts of rape or attempted rape was relevant and admissible, and tended to show intent, motive, identity, design, and system. The court did not commit error in the admission of this evidence.

Appellant further contends that the trial court committed error in refusing to give the following instruction:

"I further instruct you that it is the law that the rule of reasonable doubt, which has heretofore been explained to you, is applicable not only to the question of the guilt or innocence of the defendant, but also is applicable and should be applied by you in determining the penalty to be assessed in the event that you find the defendant guilty as charged."

Appellant's contention is unique in that he asks that the rule of reasonable doubt be applied by the jury to the punishment to be assessed by it after it had determined that appellant was guilty as charged. The court adequately covered reasonable doubt as it applied to the two counts of the indictment. The contention that § 9-1806, Burns' 1942 Replacement, which reads as follows:

"A defendant is presumed to be innocent until the contrary is proved. When there is a reasonable

doubt whether his guilt is satisfactorily shown, he must be acquitted. When there is a reasonable doubt in which of two (2) or more degrees of an offense he is guilty, he must be convicted of the lowest degree only,"

is also applicable to the punishment, is not well taken, as the last-cited statute applies only when there is a reasonable doubt in which of two or more degrees of an offense a defendant is guilty, and does not apply to the punishment, which is the sole right of the jury to assess. This right is only controlled by the conscience of each juror. The court would have committed error if the instruction contended for had been given.

Appellant further contends that a statement hereinafter set out, made by the trial judge, constituted prejudice and reversible error; that the admonition to the court was inadequate, and that the refusal to withdraw the submission of the case from the jury constituted reversible error. An oral motion was made to withdraw the submission immediately following the remarks, and a written motion for mistrial and to withdraw the submission was renewed at the end of the State's case. The record shows the following:

"Will you state the substance of the conversations which you had with the defendant there between the 24th and 30th of November, 1947?

"Defendant objects at this time for the reason that it is a conversation had between the defendant and police officers and prior to his arraignment in the case now being tried, and ask that this case be withdrawn from submission of the jury.

"Court: I don't know where you are going here you might be getting into the confession, I know very little about the case.

"Mr. Sharpnack. The defendant asks that this case be withdrawn from submission of the jury because of the remarks of the court.

"Court: Gentlemen of the Jury I was talking a moment ago to an attorney when I said what I did, the jury will disregard for any purpose, I was talking to the attorney not to the jury, and you may disregard my remark.

"Motion to withdraw submission overruled."

It is the duty of a trial judge to preside in a hearing in an impartial manner, and to refrain from making unnecessary comment or doing any act which might cause prejudice, or which is calculated to influence the minds of the jurors, against a defendant. Was the inadvertent statement of the court of such a prejudicial nature that a proper instruction would not cure it? In the trial court, appellant had objected to a question asking for a conversation. The court, in ruling on the objection, made the remark above quoted to counsel for appellee. It has been held that the remarks of a judge are ordinarily not reversible error when primarily directed to counsel and not to the jury, as in the case before us. 23 C. J. S., Criminal Law, § 987, p. 338. The comment of the court was made while ruling on the admissibility of evidence, and was not a comment on the evidence introduced. As was stated, in the case of *Stephenson* v. *State* (1933), 205 Ind. 141, 165, 179 N. E. 633, 641:

"We are persuaded that the jury fully understood that the court was ruling on the admissibility of evidence and not instructing them in the law, which they should apply when deliberating upon the guilt or innocence of appellant . . ."

The trial judge, when the motion to withdraw the submission was made, immediately instructed the jury to disregard his remarks. The fact that he said:

"Gentlemen of the Jury I was talking a moment ago to an attorney when I said what I did, the

jury will disregard for any purpose, I was talking to the attorney not to the jury, and you *may* dis-regard my remark,"

and used the word "may," is contended by appellant as being permissive and not mandatory, and that the word "shall" should have been used in instructing the jury. From the whole instruction to the jury, there is only one interpretation that could be given to this instruction, and that is that the word "may" was used in a mandatory manner and synonymous with the word "shall."[2] The court, in its final instruction to the jury, gave Instruction No. 11, which reads as follows:

"Questions asked and not answered, answers stricken out, statements of attorneys to the court in the presence of the jury unless made as admis-sion or statements of the court to attorneys in the presence of the jury are not evidence and should not be considered by you as evidence in this case for any purpose."

From the admonition and the instructions of the court to the jury, the jury could not have been misled nor could it have prejudiced them against appellant. Nor did the court indicate any guilt or innocence to the jury, but the trial court made it mandatory upon the jury to disregard the court's remarks. We believe, as was said in the case of *Nuzum* v. *State* (1883), 88 Ind. 599, 601, 602:

"Considering the remark in question, in the connection in which it was made, we do not attach the importance to it which is claimed for it by the appellant. It seems to have been made as a reason for a ruling, and considered in that light, at a distance from the scene of the trial, we do not feel

---

[2] See *State* v. *Starr* (1917), 24 N. M. 180, 173 Pac. 674, and *Grant* v. *State* (1935), 172 Miss. 309, 160 So. 600.

justified in inferring that the appellant was injured by it."

The contention of appellant is not well taken.

Appellant contends that error was committed in refusing to strike out the evidence of three police officers, assigned under separate specifications numbered (12), (21), and (22), claiming the denial of due process of law, for the reason that the finding of the gun by the witnesses was based on and accomplished through a written confession obtained unlawfully. See *Watts* v. *State* (1949), 338 U. S. 49, 69 S. Ct. 1347, 93 L. Ed. 1801. Each of these officers testified, in substance, that appellant, on the morning of November 18, 1947, directed them to a vacant lot in the 400 block of West Kansas Street, in the City of Indianapolis, where a shotgun was found, which was exhibited to the jury as State's Exhibit 31. It is to be noted that in the last-cited case, under footnote 2, the United States Supreme Court, in discussing the gun, said (p. 50 of 338 U. S., p. 1348 of 69 S. Ct., p. 1804 of 93 L. Ed.) :

"In the petitioner's statements there was acknowledgment of the possession of an incriminating gun, the existence of which the police independently established. But a coerced confession is inadmissible under the Due Process Clause even though statements in it may be independently established as true."

In the case before us no evidence was introduced as to any confession, and there is no confession in the record before this court. The fact that the shotgun was found by direction of appellant was not in itself a confession of guilt, nor could it, by itself, establish appellant's guilt. The existence of the gun had to be, and was, independently established by the State. See *State* v. *Turner* (1910), 82 Kan. 787,

109 Pac. 654, 32 L. R. A. 772; 2 Wharton, *Criminal Evidence* (10th Ed.), § 678, pp. 1398, 1399; 3 Wigmore, *Evidence* (3rd Ed.), § 859, p. 342; and 22 C. J. S., Criminal Law, § 831, p. 1454.

Furthermore, the testimony directing the officers to the shotgun, the finding of the shotgun, the introduction of the shotgun into evidence, the examining ▇ of the shotgun by the jury, and a picture showing appellant and police officers at the location of the gun, was all admitted into evidence without objection by appellant. There is no showing that the failure to object was excusable.

In the case of *Kempa* v. *State* (1945), 223 Ind. 120, 122, 123, 58 N. E. 2d 934, 935, 936, the court said:

> "At the trial of this case two witnesses testified and were cross-examined by appellant at some length with reference to the possession by the defendant of a certain gun or revolver. This particular testimony of the witnesses consists of a great many questions and answers, and is interspersed with the other testimony given by them. Aside from objecting to the offer of the revolver in evidence the appellant permitted all questions with reference thereto to be answered without objection. After the witnesses had completed their testimony appellant's counsel made the following motion: 'Defendant objects to any testimony about a gun he had unless it is shown in connection with this crime, and defendant moves to strike the testimony from the record.' The motion was overruled, and this ruling is assigned as error in appellant's motion for a new trial. A motion to strike out all of a witness's testimony relating to a certain fact is too general and indefinite, and there is no error in overruling same. *O'Brien* v. *Knotts* (1905), 165 Ind. 308, 75 N. E. 594. Furthermore, all of the testimony sought to be stricken was admitted without objection, so that the motion came too late. *Epperson* v. *State* (1937), 211 Ind. 237, 6 N. E. (2d) 538."

In *Ginn* v. *State* (1903), 161 Ind. 292, 294, 68 N. E. 294, the defendant was charged with murder in the first degree and convicted of murder in the second degree. The court said:

> "It appears therefrom that the only specific objections to said testimony urged on this appeal were made after the questions propounded to the witness had been answered. The objections not being seasonably made present no question. Afterwards the court overruled appellant's motion to strike out said testimony.
>
> "It has been uniformly held by this court that, when evidence is admitted without objection, it is not error to overrule a subsequent motion to strike it out, for the reason that such motion comes too late."

In *Epperson* v. *State* (1937), 211 Ind. 237, 241, 6 N. E. 2d 538, 539, where the defendant was convicted of kidnaping, this court said:

> "All of the above evidence was admitted without objections on the part of appellant. After the witness Harrison Hammers testified as above stated appellant's counsel made the following motion:
>
> " 'If the court please, the defendant moves to strike out the testimony of the witness because the testimony doesn't relate to the charges made in this affidavit and doesn't tend to prove or disprove any of the issues in this case.'
>
> "This motion was overruled, and exceptions reserved by appellant and this ruling is assigned as a reason in appellant's motion for a new trial. Without deciding whether the above evidence was competent and proper, no objection having been made, appellant cannot sit by and permit the evidence to be introduced, even though it is improper, and take the chance that it will be favorable to him, and then move to strike it out, if it is not favorable. It is well settled that when evidence is

admitted without objection, a subsequent motion to strike it out comes too late."

Again, in *Hunt* v. *State* (1939), 216 Ind. 171, 175, 176, 23 N. E. 2d 681, 683, the court said:

"There was no motion to suppress the testimony of the police officers, nor was any objection made to it at the time it was offered or admitted. We assume that appellant relies upon the rule that evidence is inadmissible when it has been unlawfully obtained in violation of a defendant's constitutional rights, such as, for example, protection against an accused being required to give evidence against himself or the guaranty against unlawful search and seizure. This, however, is an exception to the general rule, which is, that evidence which is otherwise competent is not rendered inadmissible by reason of the means by which it was obtained; but, even where the circumstances bring the case within the exception, the defendant can not sit by and suffer the evidence to be offered against him without objection and afterwards be heard to say that it was obtained in violation of his constitutional rights."

The trial court did not commit error in refusing to strike the evidence admitted.

After a careful examination of all of the contentions of appellant, we find no reversible error.

Judgment affirmed.

NOTE.—Reported in 95 N. E. 2d 570.